**STAMFORD STATE BANK v. MILES et al.**

**No. 2504.**

Court of Civil Appeals of Texas. Eastland.

March 16, 1945.

Tom Davis and Ratliff & Ratliff, all of Haskell, for appellant.

Smith & Smith, of Anson, and Smith & Eplen, of Abilene, for appellee.

LESLIE, Chief Justice.

Henry Petty instituted this suit against Mrs. Clara Miles, defendant, on a check (herein designated second check) for $350 drawn by her on the Stamford State Bank,

dated December 16, 1943, and payable to "Henry Petty or Bearer" and which was not paid. Mrs. Miles answered, denying liability and impleaded the Stamford State Bank, alleging that she had drawn another check (designated first check) payable to said Petty or Bearer for $350, which had been paid by the Bank, although, as she alleged, she had previously stopped payment thereon by communicating her desire to that effect to said Bank.

In the alternative she plead that if judgment were rendered against her in favor of plaintiff, Petty, that she have judgment for such amount over against the Bank, which negligently paid said first check contrary to her instructions to and agreement with the bank not to pay the same.

The Bank answered, alleging, among other things, that Mrs. Miles had not complied with Article 12, Chapter 7 of the Texas Banking Code of 1943 (1 Vernon's Annotated Civil Statutes, Art. 342—712) in her attempt to stop payment on the first check, and that as a result the Bank was not required to observe her directions to stop payment of the first check.

The trial was before the court and jury, and at the conclusion of the testimony the court on his own motion instructed a verdict for the plaintiff, Henry Petty, against the defendant, Mrs. Clara Miles, for $350, the amount of the check, etc., and for Mrs. Miles over against the Stamford State Bank for a like sum, and judgment was rendered accordingly.

The Bank has appealed, filing a supersedeas bond, payable to both Henry Petty and Mrs. Clara Miles.

The facts out of which this litigation grows are in substance as follows: Mrs. Clara Miles purchased a car from Henry Petty in Brownwood, Texas, for $350, giving said first check in payment thereof, dated December 15, 1943, and drawn on said Bank and payable to "Henry Petty or Bearer." Petty lost the check that night, and next day drove to Stamford, Texas, and persuaded Mrs. Miles to give him the second check and to stop payment on first check.

Without requiring any indemnity or other form of protection, Mrs. Miles complied with Petty's request, and on the morning of December 17, 1943, she by telephone requested the cashier of said Bank to stop payment on the first check and to cash the second check only. She related to the cashier the facts and circumstances surrounding the issuance of said checks and gave identification marks on the second check. The cashier of the bank received said information from Mrs. Miles, promised her the first check would not be cashed and made the following written notation on her bank statement: "Stop $350 to Henry Petty, Brownwood. 2 issued, one marked OK Wrecking. Second Ck. OK."

Thereafter, about noon on the same day, December 17, 1943, the first check was cashed by a total stranger to the Bank's employees. Thereupon the cashier notified Mrs. Miles what had happened and asked her if she then wanted payment stopped on the second check, to which she replied in the affirmative.

The only effort made by Mrs. Miles to stop payment of the first check was to call the cashier of the Bank by telephone and explain to him the facts and circumstances as above set out. It was pursuant to that conversation and understanding with Mrs. Miles that the cashier made for the guidance of the Bank the above notation on Mrs. Miles bank statement or the record of her account. It conclusively appears that the Bank or its cashier did not refuse to receive the information thus telephoned, but received same and noted it on her bank statement. The Bank or its cashier did not request that Mrs. Miles give such notice and request in any other form or manner. There is no contention that the telephone conversation and the above notation failed to give the Bank such full and complete information as would enable it to carry out her instructions and stop payment of the first check. Further undisputed facts are that notwithstanding the cashier's caution in making the notation on the bank statement, he omitted or "forgot" to inform the teller of Mrs. Miles' stop payment order over the telephone and the teller at noon, in the absence of the cashier and without examining her bank record or statement and observing said notation thereon, paid the first check when it was presented for payment by some one unknown to him but who endorsed on the check the purported name "R. O. Bishup." This signature followed the name "Henry Petty", which had apparently been forged.

Under the undisputed testimony we think there can be no question about Petty's right to a judgment against Mrs. Miles for the purchase price of the car,

which is evidenced by the amount of each check she gave him therefor. With full knowledge of his having lost, misplaced, or had stolen from him, the first check payable to him, or "Bearer", she accepted his explanation and in a sense forgave him his carelessness or negligence and agreed to give and did give him the second check, relying on her ability to stop payment of the first one. There is no reason why the obligations of that agreement thus deliberately entered into, may not be enforced between them, as is sought to be done by this suit. The second check was but a reaffirmation of the first, as well as the obligation arising out of the car transaction, and the court did not err in rendering the judgment in Petty's favor against her.

We now come to a consideration of what seems to be regarded by the litigants as the most vital question presented by the appeal. It is the Bank's major proposition that Mrs. Miles' telephone conversation with the Bank was insufficient to legally stop payment of the first check, and that she could not legally stop the payment of said first check and bind the Bank in any other way except by a strict compliance with Acts 1943, 48th Legislature, p. 154, Chapter 97, sub-chapter 7, Art. 12, commonly referred to as Texas Banking Code, which was in effect at the time of the transactions involved in this suit. Vernon's Ann.Civ.St. Vol. 1, Art. 342—712.

Said Article 12 is in part as follows: "The payment of any item on or subsequent to the day on which it purports to be payable, whether such payment is made during or after regular business hours or on a legal holiday, shall be valid. The person primarily obligated to pay an item may at any time prior to presentment thereof for payment instruct the bank by or through which the same is payable not to pay such item, and shall each sixty (60) days thereafter renew such instructions. *No bank shall be legally obligated to regard such instructions or renewals unless the same are in writing, dated, signed, and describe the item with certainty.*" (Italics ours.)

Appellant Bank invokes the above provision of the statute by seven points, which are considered together and grouped as follows: first, by exception to the pleadings of Mrs. Miles because she does not affirmatively allege stop payment order in terms of the above statute, second, by objections to the introduction of testimony relating to the telephone conversation and her effort to stop payment in that way, and third, by affirmatively pleading the above provisions of the statute in bar of any recovery sought against the Bank under circumstances presented.

In its brief the appellant Bank states: "The pivotal point, therefore, is whether or not payment of a check can now be stopped in any other manner than by a strict compliance with the provisions of the present law on the statute books of Texas."

As applied to said Article 12, we have found no authority in this State, or elsewhere, directly on the point, nor has the appellant called our attention to any such authority.

Obviously the Bank did not reject Mrs. Miles' telephone communication directing it to stop payment of the first check, nor did it indicate to her that it would be necessary for her to comply literally with said article before it would undertake to carry out her instructions and stop payment. Without doubt the Bank's own memorandum of stop payment entered on her bank statement was full and complete and carried all the information necessary to enable the Bank to comply with her request.

After due consideration of the above contentions in the light of general principles of law, we are of the opinion that the said statute, especially Art. 12, was enacted for the benefit of the Bank, and that it was altogether within the power of the Bank to waive its benefits, or a strict compliance therewith, and that under the undisputed testimony in this case the Bank did so. A technical compliance with the statute would have afforded the Bank no additional or better information, and it makes no such contention in this appeal.

That article of the statute is merely directory, as contradistinguished from a mandatory statute, and it may be waived by the Bank under the circumstances detailed. 39 T.J. Sec. 14, pp. 33 and 34, and authorities there cited.

The statute is analogous to the Statute of Frauds. 20 T.J. p. 203 et seq. In fact, it is in the nature of a statute of frauds. Such statutes are generally waived by those for whose benefit they are enacted but who fail to invoke them in manner and form prescribed by law. 20 T.J. p. 354, sec. 135.

752

The language in the above statute (Art. 12) is no more imperative in its nature than the law relating to the running of the statutes of limitation (2 T.J. p. 28, sec. 11 et seq.); limitation of actions (28 T.J. p. 245, sec. 146 et seq.); and the well-known venue statutes, and it is generally recognized that the benefits of such statutes are easily waived by those for whose benefit they exist but who do not invoke the same. 43 T.J. p. 882, sec. 136. See Landis v. W. H. Fuqua, Inc., Tex.Civ. App., 159 S.W.2d 228; Enfield Realty & Home Bldg. Co. v. Hunter, Tex.Civ.App., 179 S.W.2d 810.

On principle and authority we think the Bank waived such rights as it may have originally had under the terms of said statute when it accepted the information which Mrs. Miles telephoned the cashier and upon the strength of which the Bank assured her that the first check would not be paid.

Mrs. Miles has also fully alleged by way of waiver the details of such conversation and the Bank's assumption of responsibility or engagement not to pay the first check. Her right to recovery over against the Bank does not necessarily rest upon the fact of check No. 1, but upon all the facts and circumstances involved in the giving of the same, together with her telephone communication with the bank and the Bank's undertaking that the check would not be cashed when presented for payment. The estoppel as against the Bank to deny Mrs. Miles' right to recover over against it and its liability under the circumstances are in all respects complete in both pleading and testimony. Said propositions are overruled.

In the outset attention was called to the fact that the Bank filed a supersedeas bond payable to both plaintiff Petty and defendant Mrs. Miles. In effect both of them thus became appellees as to the Bank with the right in each to reply or urge appropriate counter propositions designed to answer appellant's points and sustain a favorable judgment against the appellant bank. Mrs. Miles' brief has no other or greater effect and only the propositions therein deemed pertinent on that theory have been considered. The casual designation in the brief of Mrs. Miles as an appellant is not material.

Other points have been duly considered and are overruled.

For the reasons assigned, the judgment of the trial court is affirmed.