**FROST NATIONAL BANK OF SAN ANTONIO, Appellant,**

v.

**V. E. DOBBS et ux., Appellees.**

**No. 14638.**

Court of Civil Appeals of Texas.

San Antonio.

Dec. 27, 1967.

Rehearing Denied Jan. 17, 1968.

Kelso, Locke & King, San Antonio, for appellant.

James R. Warncke, San Antonio, for appellees.

BARROW, Chief Justice.

Appellees, V. E. Dobbs and wife, Charlotte Dobbs, filed this suit to recover the sum of $3,000.00, being the proceeds of a check deposited to their account in appellant Bank on Friday, November 6, 1964, and charged back on Monday, November 9, 1964, because the drawer purportedly stopped payment on same. Appellant, hereinafter sometimes referred to as Frost Bank, filed a third-party action against

Rollin B. Ballard, independent executor and residuary devisee of the Estate of Mrs. Margaret Irvin Sullivan, the drawer of the check, who died on December 15, 1964. This third-party action was severed by the trial court over appellant's protest shortly before the case was tried. Judgment was rendered for appellees after a jury trial.[1]

The transaction occurred prior to adoption of the Uniform Commercial Code and is governed by the law then in effect, primarily, the Negotiable Instruments Act, Arts. 5932–5948, Vernon's Ann.Civ.St., and the Texas Banking Code, Art. 342, Vernon's Ann.Civ.St.

Appellant urges six points which may be grouped under four propositions: 1. The trial court abused its discretion in severing the third-party action, in that appellant would be entitled to a judgment over in the consolidated action, whereas, if the third-party action is tried separately appellant is in jeopardy of losing both causes. 2. There is no evidence to support the jury's finding that Mrs. Sullivan did not sign a Stop Payment Request or, in any event, the verdict is so against the overwhelming weight of the evidence as to demonstrate bias and prejudice. 3. Frost Bank never became liable to appellees on the check since it had the unconditional right, under Art. 342–704, Vernon's Ann.Civ.St.,[2] to refuse payment on the check and charge same back to appellees' account at the time it did so without regard to a Stop Payment Request. 4. The undisputed evidence shows that appellees did not elect to hold Frost Bank liable for refusal to pay the check, in that no claim was made against it before this suit was filed on June 15, 1966.

The facts, although presenting a rather novel situation, are largely uncontradicted.

Mrs. Sullivan, a divorced alcoholic, established a living trust with the Frost Bank in 1957, with the deposit of about $60,000.00, inherited from her mother's estate. Earnings from this trust were deposited quarterly to her checking account at said bank, and from time to time deposits of principal were made at her request. Mrs. Dobbs was a registered nurse employed by the Santa Rosa Hospital and in this capacity had known Mrs. Sullivan approximately five years. About 3:00 a. m. on November 6, 1964, Mrs. Sullivan, who was hospitalized at the Santa Rosa Hospital, desired to make a gift to Mrs. Dobbs, who was to leave on vacation the next day. With the assistance of Mrs. Dobbs, a check in the amount of $3,000.00, drawn on Mrs. Sullivan's checking account at Frost Bank, was prepared, signed and delivered to Mrs. Dobbs, together with a note for Louis Baker, a Frost Bank trust officer in charge of Mrs. Sullivan's trust account. Sometime between one and three o'clock that afternoon, Mrs. Dobbs went to Baker's office on the seventh floor of appellant bank as requested by Mrs. Sullivan.

There is some dispute as to the conversation between these parties. The note is not completely legible or coherent, however, the word "verify" is legible. Mrs. Dobbs testified that Baker called a bank teller at her request and verified that there were sufficient funds in Mrs. Sullivan's account to cover this check, and Mrs. Dobbs immediately went downstairs and deposited the check in appellees' account. Baker admitted verifying the amount in Mrs. Sullivan's account and telling Mrs. Dobbs she could deposit the check. He testified, however, that he told her he was going to talk to Mrs. Sullivan as he didn't think she could afford a gift of that size. He promised to

1. The jury found substantially as follows:
   1. On November 6, 1964, Mrs. Sullivan did not sign and deliver to Louis Baker of Frost National Bank a "stop payment request" on the $3,000.00 check.
   2. The acceptance of the $3,000.00 check was not conditional on Mrs. Sullivan's approving the payment of said check.

3. Louis Baker did not advise Mrs. Dobbs prior to the deposit of the $3,000.00 check that the payment of said check was conditioned upon Mrs. Sullivan's approval.

2. Repealed. Acts 1965, 59th Leg., Vol. 2, p. 1, ch. 721, § 10–102. Eff. June 30, 1966.

telephone Mrs. Dobbs if payment was stopped by Mrs. Sullivan. Mrs. Dobbs denied that Baker stated the deposit was conditional. Baker further testified that after Mrs. Dobbs left he telephoned Mrs. Sullivan and after talking to her on the telephone he secured and filled out a Stop Payment Request form which he took to the hospital.

Baker testified that Mrs. Sullivan signed the original of the Stop Payment Request form which he then delivered to the commercial department of the Bank. Frost Bank was unable to account for the original at the time of the trial and, although Baker produced a carbon copy from Mrs. Sullivan's file, the jury found that Mrs. Sullivan did not sign and deliver to Baker a Stop Payment Request. The evidence is undisputed, however, that later that afternoon Baker telephoned Mrs. Dobbs and advised that he had seen Mrs. Sullivan at the hospital and that he was going to stop payment on the check. The check was returned to Mrs. Dobbs by mail on November 9, 1964, marked "Payment Stopped." Appellees' bank statements were introduced into evidence which showed a deposit on November 6, of $3,000.00 and a debit on November 9, 1964, in the same amount. The check was stamped "Paid Nov. 6, 1964," and also "Cancelled in Error" was typed on same.

The Frost Bank officer in charge of the bookkeeping department testified without contradiction to the system of deferred posting used by the Bank. A deposited check goes from the teller to the proof department where the addition on the deposit slip is checked. That night the check goes through the data processing system which automatically credits the depositor's account and debits the drawer's account on magnetic tape. The next business morning the check is machine stamped "paid" and photographed. It then goes to the bookkeeping department where the signature and endorsements are verified, and a check is made to see if a "Stop Payment Request" had been received. If the check is not good for any of these reasons, the "paid" stamp is cancelled

so the check can be redeposited if desired, and the check is returned to depositor.

This evidence establishes that the drawer, Mrs. Sullivan, did not stop payment on this check before it was presented to the drawee, Frost Bank, for deposit to payee's account, and that at such time Mrs. Sullivan had funds in her account in excess of the sum of $3,000.00, sufficient to satisfy said check. Since there is no jury finding that there was an agreement between payee, Mrs. Dobbs, and Frost Bank to make the deposit conditional, appellees urge that by issuance of the deposit slip Frost Bank accepted and paid the check. Such a contention was sustained in Norton v. Mercantile Bank & Trust Co., 51 S.W.2d 1062 (Tex.Civ.App.—El Paso, 1932, writ dism'd), but that case is not controlling as it was decided prior to the adoption in 1943 of the Texas Collection Act (Arts. 342–701 to 342–712) which permits a deferred posting procedure. This act avoids the difficulty presented courts under the common law in determining the time of "acceptance" of the check by drawee, in that all rights and duties are based upon the time of "presentment" of the check to the bank by payee.

The evidence is undisputed that Baker advised Mrs. Dobbs on the day of presentment that he had talked to Mrs. Sullivan and that payment would be stopped and the check returned to her. The question presented is whether under Art. 342–704 the drawee bank is given the unrestricted power of revocation on the day of presentment.

This section is ambiguous on this point and we have found no prior decision in which this point was considered. The authors of an exhaustive review of the Texas Collection Act have expressed the opinion that the drawee's power of revocation is not restricted during the day of presentment. See Morrison & Sneed, "Bank Collections: The Stop-Payment Transaction," 32 Texas Law Review, 259, 294, 295.

Art. 342–704 provides in part that "items presented to a drawee bank shall be received by it, subject to final adjustment and all

clearing house settlements, checks, drafts, credits, advances of money, charges or entries to accounts (including sight posting), shall be conditional and subject to revocation (a) during the day on which the item is presented \* \* \*, or (b) until midnight of the banking day after the day of presentment, exclusive of Sundays and holidays, (c) if it is finally determined that the drawee bank was not at the time of presentment \* \* \* authorized or obligated to pay the item, and if the drawee bank shall within that time refuse payment and return the item, \* \* \*." (Lettering added.)

It is not clear that the restriction set out in clause (c) above, upon revocation of a conditional settlement, operated during the day of presentment as well as until midnight of the banking day after the day of presentment. As pointed out in the above cited article, in order to give content to both times it is necessary to conclude that there is no restriction on the drawee's right to revoke a conditional settlement provided the bank revokes same on the day of presentment. Otherwise, there is no clear meaning added by statutory language which includes a shorter period within the longer period of midnight of the banking day after the day of presentment. The authors also point out that this interpretation conforms to the common-law rule for clearing house settlements which permits revocation of conditional settlements for any reason, provided action is taken before cut-off time on the same day as presentment. It is also significant that the 55th Legislature amended the section by substituting "or until midnight of the banking day after the date of presentment" for "or within twenty-four hours after presentment," as provided in the 1943 Act.[3]

◼ Thus two Legislatures have specifically provided for two different periods of time after presentment of the check by payee. It is significant that the second provision which extended the period provided for in (b) above, and eliminated the uncertainty existing where the exact time of presentment was not shown, was adopted three years after the law review article had been published. We believe it can safely be assumed that the interpretation placed on these two periods of time by the above cited article was known to the Legislature when the second period was amended. We therefore believe that Art. 342–704 should be construed as giving the drawee bank unrestricted power of revocation during the day of presentment.

◼ Here the payee, Mrs. Dobbs, was advised by Baker on the day of presentment that payment on the check had been stopped. It is immaterial between appellees and Frost Bank as to whether Mrs. Sullivan signed the stop payment request or not. Although Art. 342–712 requires a stop payment order to be in writing, such requirement has been held to be directory and enacted for the benefit of the drawee bank, which could waive its benefits or require a strict compliance therewith. Stamford State Bank v. Miles, 186 S.W.2d 749 (Tex.Civ.App.—Eastland 1945, no writ).

◼ It is also immaterial whether Baker told Mrs. Dobbs that Frost Bank was accepting the check conditionally or unconditionally. Sections 132 and 189 of the Negotiable Instruments Act, supra, provide that a check of itself does not constitute an assignment of any part of the funds of the drawer in the bank, and that the bank is not liable to the holder of the check unless and until it accepts or certifies the check; further, that the acceptance must be in writing and signed by the bank. These provisions have been upheld by the Texas Courts. See Kilgore National Bank v. Moore Bros. Lumber Co., 129 Tex. 92, 102 S.W.2d 200 (Tex.Com.App.1937); Banco Longoria, S. A. v. El Paso Nat. Bank, 415 S.W.2d 1 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.); Bradley Grain Co. v. Farmers & Merchants National Bank, 274 S.W.2d 178

3. Acts 1957, 55th Leg. p. 1295, ch. 434, Art. 342–704, § 1, Vernon's Ann.Civ.St.

(Tex.Civ.App.—Eastland 1955, writ ref'd n. r. e.).

■ Payment on this check was refused by Frost Bank at a time when it had the unconditional right to do so. The trial court erred in overruling Frost Bank's motion for judgment non obstante veredicto. It is unnecessary for us to consider the question of election, or if the trial court abused its discretion in severing the third party action.

The judgment of the trial court is reversed and here rendered that appellees, V. E. Dobbs and wife, Charlotte Dobbs, recover nothing from appellant, Frost National Bank of San Antonio, by this suit.