**TULSA AUTO DEALERS AUCTION, a corporation, Plaintiff in Error,**

v.

**NORTH SIDE STATE BANK,
Defendant in Error.**

No. 41479.

Supreme Court of Oklahoma.

Dec. 6, 1966.

Rehearing Denied April 11, 1967.

Tucker, Boyd & Parks, Tulsa, for plaintiff in error.

D. Wm. Jacobus, Jr., Tulsa, for defendant in error.

BERRY, Justice.

Plaintiff in error, Tulsa, Auto Dealer's Auction, a corporation, filed an action in the district court of Tulsa County, claiming ownership of a particularly described Cadillac automobile, allegedly wrongfully detained by defendant bank, which refused to surrender same. Plaintiff sought an order temporarily restraining defendant from disposing of the property pursuant to notice of sale, permanent injunction against sale of the chattel, and also asked confirmation of title, ownership and the right of possession. Upon the verified petition, affidavit for replevin, and bond the plaintiff secured possession of the vehicle.

Defendant bank denied the allegations of the petition and particularly as to plaintiff's ownership of the vehicle. By cross-petition defendant asserted claim to the property, based upon a $4,060.00 loan to one Cates and execution of a note and security agreement covering this chattel, default of the borrower upon the obligation, and defendant's repossession of the car; that plaintiff had no interest in the property, so the continued detention was wrongful and resulted in damage to defendant. In view of the relief sought under the cross-petition the cause was transferred to the Common Pleas Court.

By reply, and answer to the cross-petition plaintiff neither admitted nor denied the allegations concerning the note and security agreement and demanded strict proof. For defense to the cross-petition plaintiff alleged the owner (Cates) was a used car dealer who (August 1, 1963) delivered this vehicle to plaintiff for sale at auction; that plaintiff sold same to one Lacy, giving its check to the seller and accepting the buyer's check in payment; the buyer's check thereafter was returned unpaid, whereby plaintiff became subrogated to the buyer's rights and was entitled to possession and confirmation of ownership.

Jury trial was waived and, after trial to the court, the matter was submitted for consideration upon the evidence. The trial

court filed written findings of fact and conclusions of law, upon which judgment was entered for defendant and the writ of replevin denied. The journal entry of judgment adopted the findings of fact and conclusions of law, and rendered judgment for defendant upon the cross-petition for return of the property or the value thereof.

The matters hereafter summarized, disclosed by the record and the facts as found by the trial court, present the basis of this appeal. Plaintiff conducted a general automobile auction sale, generally held once each week, at which automobiles of all kinds were sold either to or for licensed automobile dealers. Automobiles could be bought and sold by licensed dealers at times other than the regular weekly auction, but all transactions cleared through plaintiff's office. When a sale was consummated the plaintiff issued its check showing the amount for which a car was sold, the amount deducted by plaintiff as commission, and the net sum paid the seller. The buyer would pay for the car purchased by check, or by draft attached to the automobile title.

One Cates, an admitted felon, had been a licensed used car dealer in Tulsa, Oklahoma, for about eighteen months prior to the transactions which provided a basis for this litigation, and was so known to all parties involved. In the normal course of dealings, Cates had bought and sold cars valued at more than half million dollars through Tulsa Auto Dealers Auction.

In response to Cates' inquiry a particularly described Cadillac automobile was brought to plaintiff's auction by an out of state dealer. This car was bought directly by Cates on July 25, 1963, without going through the auction, being paid for by draft for $4,505.00, which was returned unpaid, but Cates later paid this by cash. The direct purchase was not an irregular procedure, and plaintiff charged the same fee for this purchase as would have been charged had the car been auctioned over the block.

On July 30, 1963, Cates borrowed $4,060.00 from defendant, executing a note and security agreement with the car as security. The security agreement evidencing this loan was recorded on August 1, 1963, and on that day Cates placed the car at plaintiff's auction where it was sold to a used car dealer (Lacy) in Shawnee, Oklahoma. The buyer gave plaintiff a check, drawn upon the Bank of Meeker, in the amount of $4,555.00 in payment. Plaintiff then issued a check in favor of Cates for $4,520.00, the sale price less commission, and left the check in plaintiff's office with directions that the check be given Cates only if he surrendered the title the next morning. Upon presentation, the Lacy check was not paid, and plaintiff later learned payment thereon had been stopped. Thereafter Lacy disappeared, the check never was paid, and his whereabouts at the time of trial were unknown.

Evidence at the trial developed the fact that, subsequent to August 1, 1963, Lacy sold this automobile back, or at least delivered possession to Cates, who then surrendered the car to defendant. Learning of defendant's intended sale of this chattel, plaintiff instituted a replevin action in the district court, claiming a proprietary interest as owner of the vehicle. Upon the verified petition, affidavit for replevin and proper bond the plaintiff took possession of the automobile.

The matters summarized are disclosed by the pleadings, evidence and the findings of fact made by the trial court. Based upon the facts found from the evidence, the trial court then rendered written conclusions of law, the substance of these conclusions being: (1) Cates' sale to Lacy was in the ordinary course of business, and Lacy took free of defendant's security interest under 12A O.S. 1961, §§ 2–403, 9–307; (2) defendant's contention that the sale to Lacy was void under provisions of 24 O.S. 1961, § 1 et seq. was not pleaded, was raised after trial, and constituted a material change in defense of the action, beyond

authority of the court to allow as an amendment to conform to the proof, and so could not be considered; (3) plaintiff's claim that Lacy's failure to pay for the automobile resulted in plaintiff becoming the owner and entitled to maintain the action fails under both law and facts; (4) plaintiff's advance of purchase price to Cates for Lacy's benefit gave plaintiff an unperfected security interest in the car; (5) Lacy's sale of vehicle back to Cates was in ordinary course of business and Cates took free of plaintiff's security interest under 12A O.S. 1961, §§ 2–403, 9–307; (6) having concluded Lacy sold the automobile back to Cates, Lacy had no rights to which plaintiff could be subrogated and this claim did not need to be decided; (7) as a result of the court's findings and conclusions the plaintiff's action was not maintainable under any theory presented, and defendant's demurrer to the evidence should be sustained and judgment entered denying the writ of replevin.

The findings of fact and conclusions of law were adopted as part of the Journal Entry by reference. The court denied plaintiff's petition and rendered judgment upon defendant's cross-petition for return of the vehicle, or value ($4,060.00) at the time replevined, together with costs and attorneys fees. Motion for new trial was overruled, and the appeal brought to this Court.

Two propositions are urged as grounds for plaintiff's claim the trial court erred in sustaining the demurrer to plaintiff's evidence, and that this Court should reverse the trial court and direct entry of judgment for plaintiff for replevin of the automobile. Both propositions are dependent upon argument as to the weight of the evidence upon which the findings and conclusions of the trial court were based. Since the controlling inquiry simply is whether the trial court properly sustained the demurrer to plaintiff's evidence, it is unnecessary to consider the contentions separately, other than noting separate arguments advanced in relation to issues

sought to be presented as determinative of the question as to plaintiff's right to maintain the action.

Plaintiff asserts the manner in which the transaction was handled constituted a sale by Cates to plaintiff, and a resale by plaintiff to Lacy who paid for the car with a worthless check. Upon this premise plaintiff asserts the rights between plaintiff (as seller) and Lacy (as buyer) became fixed under 12A O.S. 1961, § 2–507(2), which provides that when payment is due on delivery, the buyer's rights to retain or dispose of the goods is conditional upon the buyer making payment; and under section 2–511, payment by check is conditional and is defeated between the parties by dishonor of the check upon due presentment. In this manner the conclusion is reached that when Lacy's check given as payment was dishonored plaintiff thereupon was entitled to possession of the automobile.

The second ground advanced is that, assuming the trial court was correct in holding there was a sale from Cates to Lacy, the transaction came within purview of 12A O.S. 1961, § 9–107(1), which provides:

"A security interest is a 'purchase money security interest' to the extent that it is

(a) * * *; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of the collateral if such value is in fact so used."

It is argued that plaintiff is protected under (b) supra, since it is undisputed that plaintiff advanced the purchase money for the benefit of Lacy, and paid some to Cates.

Both arguments mentioned essentially rest upon the claim plaintiff was the seller of the automobile involved, having "bought" the vehicle from Cates. The inherent weakness of this premise is abundantly clear. The statute, 12A O.S. 1961, § 2–103(1), (a), (d), defines the terms "buyer" and "seller." The evidence concerning plaintiff's ordinary mode of

transacting business, coupled with evidence showing plaintiff never took title to the vehicle involved and did not intend or attempt to "buy" the car, conclusively negates the purported claim that plaintiff bought from Cates and resold to Lacy in the usual course of business. Plaintiff concededly handled the transaction in the customary manner as an auctioneer, which relationship constituted plaintiff as Cates' agent until the car was sold. See generally 7 C.J.S. Auctions and Auctioneers § 6 et seq.; 7 Am.Jur. (2) Auctions and Auctioneers § 47 et seq.; 20 A.L.R. 137(b).

■ Under this record, no need arises for extended citations or discussion of authority bearing upon the rights, duties and legal responsibilities of auctioneers. An auctioneer, as representing a class of agency, is considered an agent of both parties to the sale, and by virtue of the employment is agent only of the seller until the hammer falls. 7 C.J.S., supra, § 7; Benjamin on Sales § 270; Pasley v. Ropp (Mo.) 334 S.W.2d 254, 80 A.L.R.2d 1341,. and particularly observe section 4, at page 1242, disclosing the auctioneer's responsibility where the auctioneer contracts with the buyer personally or by implication that title is or will be made good.

The conclusions of law, upon which judgment was rendered, recognized the plaintiff's status as an auctioneer by noting the sale was consummated at plaintiff's auction and completed pursuant to custom. This finding, however, is supported by undisputed testimony, and is sufficient to establish as a matter of law that plaintiff did not buy or sell the vehicle as those terms are defined by statute. This being true plaintiff cannot reply upon provisions of 12A O.S. 1961, § 1 et seq. to support the attempted claim of priority and right to enforce the unperfected security interest.

The second contention claims reversible error in finding of fact No. 7, which was that Lacy sold this automobile back to Cates for a valuable consideration. In this connection plaintiff admits if such finding is correct the entire argument advanced under proposition one is without merit. Under this contention plaintiff's brief sets forth Cates' testimony in toto. From this starting point plaintiff attacks the weight of the evidence to support the trial court's finding as erroneous, asserts that the 5th and 6th conclusions of law are incorrect, and concludes that plaintiff has a security interest in the automobile free of any interest claimed by defendant, and therefore is entitled to judgment.

Plaintiff complains that the trial court refused to consider Cates' testimony concerning the transaction to the effect that no sale took place. He testified the transaction really was a loan negotiated by agreement with plaintiff's officers and employees, whereby he borrowed money upon the car for Lacy's benefit without surrendering possession and without the automobile being handled by plaintiff or actually delivered into Lacy's possession. But, plaintiff says even if this testimony had been accepted by the trial court, there is no evidence that the automobile was sold back to Cates; since Lacy was the only witness in the position to testify concerning this fact.

■ We consider it unnecessary to discuss the weight or credibility such evidence should have been accorded. It is necessary only to note the evidence of plaintiff's records kept in the usual course of business, and the testimony of knowledgeable witnesses who assisted in handling the affair, positively established the facts of the transaction as having been otherwise than as indicated by the interpretation plaintiff seeks to place upon the evidence. Cates placed the car in plaintiff's auction for sale; the car was sold through the auction to Lacy and plaintiff issued its check, less the usual commission, to Cates; plaintiff gave Lacy possession of the car, upon receipt of his check for the purchase price, without making any effort to protect itself, and without requiring Cates to deliver the title at the time of sale. At this time (August 1, 1963) Cates' draft for the original purchase price was unpaid. However,

plaintiff drew its check ·in his favor for $4,520.00 "because he sold the car to Lacy * * * and Calvin (Lacy) gave me * * * this check * * * for $4,555.00. That left me owing him $4,520 less the $35 commission. * * *" However, admittedly because of prior business dealings with Lacy, the plaintiff placed Lacy in possession of the car.

The trial court, hearing this matter as the trier of the facts, properly considered all this evidence and the reasonable inferences deducible therefrom. If Lacy actually received the money but surrendered possession of the car to Cates there was consideration for the transfer. If, through a fraudulent arrangement with Cates, Lacy did not receive either the car or the money no rights accrued (to Lacy) for possession as against Cates, and Lacy's worthless check for a car to which plaintiff did not furnish title did nothing to enhance plaintiff's claim of a superior interest. Whatever rights plaintiff had evolved from dealing with Lacy who secured no rights to the property and plaintiff could succeed to no right other than through Lacy who had been placed in possession by plaintiff. Thus Lacy had no rights to which plaintiff could be subrogated.

The trial court's findings that plaintiff did not become the owner of the automobile and thus could not maintain the action was correct, and the demurrer to plaintiff's evidence properly was sustained. The settled rule as stated in Jones v. Sibley, Okl., 360 P.2d 519, is:

"Where a jury is waived in a law action and the cause tried to the court, the judgment of the court in conformity with the evidence must be given the same force and effect as the verdict of a properly instructed jury; if there be any competent evidence reasonably tending to support the judgment of the trial court the same will not be disturbed on appeal."

Judgment affirmed.

HALLEY, C. J., and BLACKBIRD, IRWIN and LAVENDER, JJ., concur.

DAVISON, J., concurs in result.

JACKSON, V. C. J. and WILLIAMS and HODGES, JJ., dissent.