WELDON DOUGLAS ET AL *v.* THE CITIZENS BANK OF JONESBORO

5-4401                                                            424 S. W. 2d 532

Opinion delivered February 26, 1968

*Ward & Mooney,* for appellants.

*Douglas Bradley,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves two separate causes of action, which however, by agreement, were set forth in one set of pleadings, and disposed of at one hearing. Appellants, Weldon Douglas, and Janie Chandler, each maintained a checking ac-

count in the Citizens Bank of Jonesboro. Rees Plumbing Company, Inc. (which is not presently a party to this proceeding), was a customer of the bank, and maintained checking accounts. On August 19, 1966, the plumbing company delivered its check in the amount of $1,000.00 to Douglas. On that same day Douglas presented the check to the bank for deposit to his own checking account; an employee at the teller's window prepared a deposit slip, dated as of that day, reflecting that the check was being deposited to Douglas' account. He was given a duplicate of the deposit slip, and an employee of the bank thereafter affixed to the back of the check a stamp in red ink, denoting the August 19th date, and stating, "Pay to any bank—P.E.G., Citizens Bank of Jonesboro, Jonesboro, Arkansas." Under date of August 20, 1966, the bank dishonored the check because of insufficient funds, and charged the amount back to the account of Douglas. This same statement of facts applies to Mrs. Chandler, except that the check she presented was originally made payable to a Richard R. Washburn (in the amount of $1,600.00) by the same Rees Company, and this check had been properly endorsed by Washburn before coming into the hands of Mrs. Chandler.[1]

Rees Plumbing Company filed an unverified complaint against the bank, alleging that it had issued the aforementioned checks to the parties, and that it had sufficient funds in the accounts to honor these checks. It was alleged that the checks were wrongfully dishonored, and Rees sought damages due to the alleged willful and wanton negligence of the bank in handling its checks. Subsequently, the complaint was amended to join appellants as parties plaintiff (together with another party which later took a non-suit). Thereafter, on motion of appellee, Rees Plumbing Company was strick-

---

[1]The check presented to the bank by Mrs. Chandler was dated on August 18, instead of 19, and was drawn by Rees on another account, which it had in the Citizens Bank.

en as a party plaintiff. After first demurring, and moving to make the complaint more definite and certain, the bank filed an answer setting out that the accounts of Rees were insufficient on August 19 to honor the checks, and further, that both were charged back to the accounts of the respective appellants on August 20, and the appellants so notified. The bank further denied that the endorsement stamp, heretofore mentioned, constituted an acceptance stamp. The bank asserted that the stamp was no more than a method of identification. Both appellants and the bank, appellee herein, filed verified motions for summary judgment. Appellants' motion was supported by the checks and the deposit slips, which had already been filed, and appellee's motion was supported by the affidavit of Major Griffin, Vice-President of the Citizens Bank, filed with the motion for summary judgment. The affidavit reflects that Griffin had been engaged in banking with the Citizens Bank for 20 years, and it asserted that he was familiar with the processing of items in the Citizens Bank, as well as the normal procedures of other banks, and particularly familiar with the stamps and symbols used by banks in the area. He then explained the procedure used by appellee, and stated that the stamp served only to identify the depository bank, and that the endorsement appeared on all checks received by appellee which are not received from other banking institutions. He then stated:

"Any item for any reason can be returned by the Citizens Bank or any other banking institution (except those cashed over the counter) if rejected before midnight of the next banking day following the banking day on which the item is received, and prior to the bank stamping its 'paid' stamp thereon and filing in the customer's file.

"I have examined the Citizens Bank records with reference to a $1,600.00 check drawn on Rees Plumbing Company, Inc. account number 810 657 payable to Richard R. Washburn and find that it was deposited to the account of Mrs. Janie Chandler, a customer of the Citi-

zens Bank in account number 301 191 on August 19, 1966. This deposit was posted to the Citizens Bank Journal to the credit of Mrs. Janie Chandler's account on August 19, 1966, but the check was not posted to Citizens Bank Journal as a charge to the Rees Plumbing Company account on which it was drawn because there was no balance in the Rees Plumbing Company Account at close of business on the date of August 19, 1966. The account of Mrs. Janie Chandler was debited for the insufficiency under date of August 20, 1966, and was returned to Mrs. Chandler.''

He stated that the same procedure was followed with the Douglas check. The court denied the motion of the appellants, but granted that of the bank.

Thereafter, appellants petitioned the court to reopen the case for the purpose of receiving additional evidence on the question of what weight, if any, might be given to a statement printed on the backs of the deposit slips which had been introduced into evidence by agreement. The language on the back of the deposit slips provides, *inter alia*, that ''items drawn on this bank not good at close of business day on which they have been deposited may be charged back to depositor.'' Appellants desired to introduce evidence to show that they did not know of the language on the back of the slips. The court refused to reopen the case, but the trial judge did state that, in reaching his conclusions, he gave no consideration at all to this language; nor do we consider same in the present instance, it being immaterial to the disposition of the litigation. From the judgment denying the motion to reopen the case; denying the motion for summary judgment filed on behalf of appellants, and granting the motion for summary judgment on behalf of appellee, comes this appeal.

The principal question at issue is, ''Did the bank, by stamping the endorsement upon the checks deposited by appellants, and by delivering to appellants the de-

posit slips, accept both of said checks for payment?" The answer is, "No," and it might be stated at the outset that cases decided prior to the passage of the Uniform Commercial Code are not controlling. This case is controlled by the following sections of the Code: Ark. Stat. Ann. § 85-4-212 (3), § 85-4-213, and § 85-4-301 (1) (Add. 1961).

Subsection (3) of Section 85-4-212 reads as follows:

"A depositary bank which is also the payor may charge back the amount of an item to its customer's account or obtain refund in accordance with the section governing return of an item received by a payor bank for credit on its books (Section 4-301[ § 85-4-301])."

Subsection (1) of Section 85-4301 provides:

"Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day[2] of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subsection (1) of Section 4-213 [§ 85-4-213]) and before its midnight deadline it

(a)   returns the item; or

(b)   sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return."

Section 85-4-213 simply sets out the time that a payment becomes final, not applicable in this instance.

---

[2]According to Section 85-4-104, "midnight deadline with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

When we consider the statutes above referred to, it is clear that appellants cannot prevail.[3] Clark, Bailey and Young, in their American Law Institute pamphlet on bank deposits and collections under the Uniform Commercial Code (January, 1959), p. 2, comment as follows:

"If the buyer-drawer and the seller-payee have their accounts in the same bank, and if the seller-payee deposits the check to the credit of his account, his account will be credited provisionally with the amount of the check. In the absence of special arrangement with the bank, he may not draw against this credit until it becomes final, that is to say, until after the check has reached the bank's bookkeeper and, as a result of bookkeeping operations, has been charged to the account of the buyer-drawer. (The seller-payee could, of course, present the check at a teller's window and request immediate payment in cash, but that course is not usually followed.) If the buyer-drawer's account does not have a sufficient balance, or he has stopped payment on the check, or if for any other reason the bank does not pay the check, the provisional credit given in the account of the seller-payee is reversed. If the seller-payee had been permitted to draw against that provisional credit, the bank would recoup the amount of the drawing by debit to his account or by other means."

The comment of the commissioners is also enlightening. Comment 4, under Section 85-4-213, states:

"A primary example of a statutory right on the part of the payor bank to revoke a settlement is the right to revoke conferred by Section 4-301. The under-

---

[3]An order denying a motion for summary judgment is merely interlocutory, leaving the case pending for trial, and is not appealable; however, in holding that the court did not err in granting the summary judgment to the bank, the question of whether appellants were entitled to summary judgment is necessarily answered in the negative.

lying theory and reason for deferred posting statutes (Section 4-301) is to require a settlement on the date of receipt of an item but to keep that settlement provisional with the right to revoke prior to the midnight deadline. In any case where Section 4-301 is applicable, any settlement by the payor bank is provisional solely by virtue of the statute, subsection (1) (b) of Section 4-213 does not operate and such provisional settlement does not constitute final payment of the item.''

Appellants assert that the affidavit of Major Griffin was never introduced into evidence, and cannot be considered as anything more than any other pleading in the case. We do not agree. We know of no requirement that an affidavit be "introduced;" the affidavits are simply filed, and this particular one was filed with the motion for summary judgment. *Epps* v. *Remmel,* 237 Ark. 391, 373 S. W. 2d 141.

No counter-affidavits were filed by appellants. They were content to rely on the checks and deposit slips offered as exhibits, and counsel for appellant stated, ''I want the motion for summary judgment on behalf of defendant to be considered as contradicted. Did not file a formal affidavit, offered proof.'' This, of course, constituted no more than the legal question here presented for determination, *i. e.,* "Did the bank by stamping the endorsement upon the checks deposited by appellants, and by delivering to appellants the deposit slips, accept both of said checks for payment?'' It is not necessary to discuss whether counsel's simple statement can be considered as controverting the Griffin affidavit, since the court permitted it, and it is not decisive in determining the issue herein presented. There was no request by counsel for time to present an affidavit, or to take the deposition of Rees, or anyone else. The Rees complaint (unverified) alleged that sufficient funds were on hand to pay the checks, and the checks were wrongfully dishonored. Nonetheless, no affidavit was made to support this conclusion, nor was one made that

sufficient funds had been deposited on the 19th to enable the checks to be paid. In *Epps* v. *Remmel, supra,* we said:

"* * * To take a simple example, if in an action on a promissory note, the defendant in his answer denies the making of the note; the plaintiff makes a motion for a summary judgment, accompanying it by an affidavit of a person who swears that he saw the defendant sign the note; and the defendant does not file an opposing affidavit, summary judgment should be rendered for the plaintiff."

There is absolutely nothing in the record to contradict Major Griffin's sworn statement that he examined the records at the close of business on August 19, and there was no balance in the Rees Plumbing Company accounts.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached. I consider the fact statements in the affidavit of Major Griffin with reference to the sufficiency of funds in the Rees accounts to have been inadmissible in evidence, not having been within his personal knowledge and having been obtained only by an examination of records. *Oliver* v. *Eureka Springs Sales Company,* 222 Ark. 94, 257 S. W. 2d 367; *Mevorah* v. *Goodman,* 79 N. D. 443, 57 N. W. 2d 600. A movant for summary judgment must sustain his burden to clearly show that there is no genuine issue of fact by matters of which the court will take judicial notice or by evidentiary matters which the court is entitled to consider. 6 Moore's Federal Practice, § 56.15[3], p. 2340. Affidavits must be made on personal knowledge. Ark. Stat. Ann. § 29-211(e) (Repl. 1962); 6 Moore's Federal Practice, § 56.11[1-2], p. 2145; *Walling* v. *Fairmont Creamery Co.,* 139 F. 2d 318 (8th Cir. 1943); *Zampos* v. *U. S.*

*Smelting, Refining & Mining Co.,* 206 F. 2d 171 (10th Cir. 1953). Testimony that would not be admissible at the trial may not be set forth in affidavits supporting or opposing summary judgment. *DePinto* v. *Provident Security Life Ins. Co.,* 374 F. 2d 50 (9th Cir. 1951) Where written documents are relied upon, they must be exhibited in full. Neither the statement of their substance, the affiant's interpretation of them nor his conclusions drawn therefrom are sufficient. *Walling* v. *Fairmont Creamery Company, supra.* While an affidavit may be used to introduce documentary proof, the written material should be attached to the affidavit and served with it. *Sprague* v. *Vogt,* 150 F. 2d 795 (8th Cir. 1945); 6 Moore's Federal Practice, § 56.11[1.-2], p. 2145. Statements of legal conclusions and references to papers to which no sworn or certified copy is attached should be disregarded. *State of Washington* v. *Maricopa County,* 143 F. 2d 871 (9th Cir. 1944).

Important questions as to credibility and right of cross-examination might also arise, particularly in view of the fact that information as to the Rees bank accounts was peculiarly within the knowledge of appellee.

Yet, appellants did not file controverting affidavits, as they might have pursuant to Ark. Stat. Ann. § 29-211(e) (Repl. 1962), or move for a continuance under § 29-211(f) (Repl. 1962), or avail themselves of discovery procedures under § 28-348 et seq. (Repl. 1962). Nor did they by any objection at any time raise any question of credibility, right of cross-examination or admissibility of testimony.

By the great weight of authority it is not reversible error for a trial court to consider a defective statement or affidavit on motion for summary judgment in the absence of a motion to strike or other form of objection specifying the deficiencies therein. 6 Moore's Federal Practice, § 56.22[1], p. 2817; *Mitchell* v. *Dooley Bros.,* 286 F. 2d 40 (1st Cir. 1960), cert. denied, 366 U. S. 911,

81 S. Ct. 1086, 6 L. Ed. 2d 236; *Klingman* v. *National Indemnity Co.,* 317 F. 2d 850 (7th Cir. 1963); *U. S.* v. *Western Electric Co. Inc.,* 337 F. 2d 568 (9th Cir. 1964); *Scharf* v. *Waters,* 328 Ill. App. 525, 66 N. E. 2d 499 (1946); *Baum* v. *Martin,* 335 Ill. App. 277, 81 N. E. 2d 757 (1948); *Republic Chemical Corp.* v. *United Sterling Corp.,* 205 Misc. 730, 118 NYS 2d 368, aff'd, 281 App. Div. 1018, 121 NYS 2d 272 (1953). It has been said that the objection must be specific. See, *e. g., Grubbs* v. *Slater,* 266 S. W. 2d 85 (Ky. 1953). Failure to object is sometimes said to constitute a waiver. See *Scharf* v. *Waters, supra; Republic Chemical Corp.* v. *United Sterling Corp., supra; Hall* v. *Fowler,* 389 S. W. 2d 730 (Tex. Civ. App. 1965). Yet it would not be error for the court to disregard inadmissible evidence on motion for summary judgment in the absence of any objection. *Mitchell* v. *Dooley Bros., supra.* It has been said, also, that objection should be made in the trial court in order to afford an opportunity for correction of the objectionable defects. *Hall* v. *Fowler, supra.* It is also said that objections to formal deficiencies based on incompetency of evidence should not be raised on appeal for the first time. *Youngstown Sheet & Tube Co.* v. *Pennsylvania,* 363 S. W. 2d 230 (Tex. 1963).

These rules and the reasons therefor seem to me to be applicable in this case.

I concur fully in the majority opinion on all other issues.