**DEL RIO BANK AND TRUST COMPANY,**
**Appellant,**

v.

**Helen B. McCARTY, Appellee.**

**No. 15100.**

Court of Civil Appeals of Texas,
San Antonio.

Dec. 27, 1972.

Company for the alleged wrongful and negligent transfer of $4,000 from her special account into a joint checking account which she had with her husband. The parties will be referred to herein as they were in the trial court. The jury's verdict exonerated the defendant of negligence, but the trial court granted plaintiff's motion for judgment non obstante veredicto.

Defendant brings forth five points of error as follows: (1) the trial court erred in sustaining plaintiff's first amended motion for judgment non obstante veredicto; (2) the evidence does not establish as a matter of law an oral contract between defendant and plaintiff; (3) the evidence does not establish as a matter of law that defendant violated any oral contract by transferring $4,000 from Mrs. McCarty's special account to the joint account with her husband; (4) the evidence fails to establish as a matter of law that defendant violated the written agreement contained on the signature card on Mrs. McCarty's special account by transferring $4,000 from the special account to the joint account of Mr. and Mrs. McCarty; and (5) defendant had a right to transfer $4,000 from Mrs. McCarty's special account to the joint account of Mr. and Mrs. McCarty.

Plaintiff, in her pleadings in the trial court, alleged that defendant unilaterally, arbitrarily, negligently, and unlawfully withdrew from her account the sum of $4,000; that as a result of such transfer, she was unable to discharge her obligations, and her credit was severely damaged; and that she is entitled to recover actual damages of $4,000 and an additional sum of $150,000 for gross negligence. No special issue on the basis of a contract was requested, nor was any submitted; and the case was submitted to the jury on a negligence theory only, and the verdict of the jury exonerated the bank.[1] Plaintiff in her amended motion for judgment non ob-

Groce, Locke & Hebdon, Edward P. Fahey, San Antonio, for appellant.

Frank J. Greene, San Antonio, for appellee.

KLINGEMAN, Justice.

Mrs. Helen B. McCarty, appellee herein, brought suit against Del Rio Bank & Trust

[1]. In answer to Special Issue No. 1, the jury found that the Del Rio Bank & Trust Company was not negligent in transferring the sum of $4,000 from the special account to the joint account. Special Issue No. 2 on proximate cause was not answered, and in answer to the damage issue, the jury answered, "None."

stante veredicto relies solely on a breach of contract theory, alleging that the undisputed evidence at the trial establishes both an oral and a written contract;[2] and that defendant's breach thereof entitled plaintiff to judgment in the sum of $4,000 as a matter of law. The judgment recites that the evidence raises no issues of fact as to the existence of a contract between the parties and a breach of same, and that a directed verdict for plaintiff would have been proper. No motion for directed verdict was made by plaintiff.

Testimony as to just what happened in connection with the matter here involved is conflicting and disputed.

Plaintiff, Helen B. McCarty, is married to Glover McCarty, but they do not live together and have been separated for several years. On November 15, 1968, Mr. McCarty went to the Del Rio Bank & Trust Company in Del Rio, Texas, and opened a joint account with plaintiff, making two deposits totaling $9,500. Plaintiff thereafter went to Del Rio and signed the signature card on this joint account. It is undisputed that both Mr. and Mrs. McCarty had equal rights to such account, and each could write checks on such account. On such account, Mr. and Mrs. McCarty gave their address as the Catalina Motel in Del Rio, Texas.

On November 21 and 22, 1968, Mr. McCarty wrote three checks on such joint account to a Mr. Cecil Taylor, one in the amount of $2,000, another for $1,000, and another for $100. On November 21, 1968, Mr. McCarty had also written another check on such joint account made to cash in the amount of $1,200. All of these checks had come into the Del Rio bank by Friday, November 22 for collection, and were posted to the ledger of the joint account and paid on Monday, November 25, Saturday being a bank holiday.

On Saturday, November 23, 1968, plaintiff came to Del Rio from Albuquerque, and went to the bank which was then closed. On Monday, November 25, 1968, she went to the Del Rio bank about 9:00 a. m. and met Mr. Pusard, an assistant cashier. The testimony as to what happened thereafter is disputed and conflicting. Plaintiff testified that she wanted to withdraw $6,500 and had already prepared a check written on such joint account in this amount. She testified that she told Mr. Pusard that she wanted to withdraw such amount and deposit it in another bank in Del Rio, but that Mr. Pusard told her that this was not necessary, but that she could set up a special account on which no one else could draw, and there was no reason to take her money elsewhere. Mr. Pusard's testimony is conflicting with that of plaintiff in this regard. His testimony is to the effect that plaintiff told him that she had a joint account with her husband, and that with such joint account she could never keep track of how much money they had left, and that she wanted to open an account that was her own and on which she alone could write checks. This was done by opening an account in the name of Helen B. McCarty, Special, so as to eliminate any confusion between the accounts. Mr. Pusard denies that plaintiff told him that she wanted to withdraw such amount from defendant bank and deposit it in another bank in Del Rio.

At any rate, prior to the opening of such account, Mr. Pusard checked the balance of the joint account (this was early on the morning of Monday, November 25) on the ledger account and found the balance to be $8,332.64, and a deposit slip was made out to the Helen B. McCarty Special account

2. Plaintiff asserts that she is entitled to a judgment as a matter of law on two theories: (1) that the signature card of plaintiff on her special account constituted a written agreement to honor only her checks over her signature; and (2) that plaintiff had an oral agreement with defendant to honor only checks over her signature on the special account, and that the special account would be kept separate and distinct.

in the amount of $6,500. A signature card was also made out with both the signature card and account showing her address as the Catalina Motel, Del Rio, Texas. At the time that this deposit slip was made out, the four checks given by Mr. McCarty, which had arrived at the bank on the previous Friday, had not been posted on the ledger account. Had these checks been considered, the balance in the joint account would have been less than $6,500, and the check for $6,500 would have been "hot" because of insufficient funds. When Mrs. McCarty's check for $6,500, drawn on the joint account to be deposited to her special account, reached the bookkeeping department on November 26, 1968, the balance in the joint account was down to $5,175 and was insufficient to pay the $6,500 check.

There is testimony, which is undisputed, that the Del Rio bank operated on a "deferred posting procedure," and that it is impossible for a bank, unless it is thoroughly computerized, which the Del Rio bank was not, to post a deposit on the day that it is made. When the matter of the insufficiency of the funds in the joint account to pay the $6,500 check drawn by Mrs. McCarty was called to the attention of Mr. Pusard, on the date of November 26, he tried to contact both Mr. and Mrs. McCarty at the Catalina Motel, the address shown on their accounts, but was unable to do so. After some consultation, it was decided to transfer $4,000 from Mrs. McCarty's special account back to the joint account, so that the $6,500 check could be paid. This was done, and Mrs. McCarty's check for $6,500 was paid. The bookkeeping transfer of the $4,000 from the special account to the joint account was made by charge slip.

No further contact was had by the bank and Mr. and Mrs. McCarty until on or about December 1, 1968, when Mrs. McCarty was in the Broadway National Bank in San Antonio, attempting to cash a $2,300 check written on her special account. At such time the San Antonio bank

phoned the Del Rio bank and found that there was insufficient funds in the special account to cover this check. Mrs. McCarty talked to an officer of the Del Rio bank and found that the balance in the joint account was approximately $900, and she authorized the bank to transfer such amount from such joint account to her special account, which was done. The $2,300 check was paid, and plaintiff received the benefits thereof.

Plaintiff asserts that defendant should have "flagged" the joint account on Monday morning, November 25, at the time she opened the special account, and that if this had been done, the check of $6,500 would have taken precedence over any other checks until the $6,500 check had been paid. We cannot see how the bank had the authority to, or any right to, "flag" a check so that it takes precedence over other checks drawn on the same account, which were already in the bank and outstanding at the time the $6,500 check was presented to the bank, to the detriment of not only the person who gave such prior checks, but also to the payees thereon. It is undisputed that the four checks given by Mr. McCarty in the amounts of $2,000, $1,000, $100, and $1,200 were in the bank on the prior Friday, and that when Mrs. McCarty's check for $6,500 given on Monday morning, November 25, reached the bookkeeping department on Tuesday, November 26, the funds in the joint account at that time were down to $5,175.

The signature card signed by plaintiff on the special account provides in part as follows:

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits . . . This bank or its correspondents may send items, directly or indirectly to any bank, including the payor, and accept its draft or credit as conditional

payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at the close of business on day deposited . . . I hereby agree to the by-laws, rules and regulations of the above mentioned bank, governing deposits made, now and/or hereafter adopted by said bank."

The deposit slip provides: "In receiving checks for deposit payable elsewhere than in this city, this bank assumes no responsibility for the failure of any of its direct or indirect collecting agents, and shall only be held liable when proceeds in actual funds or solvent credits shall have come into its possession. Under these conditions amounts previously credited may be charged back to depositor's account. In making deposits, the depositor hereby assents to the foregoing conditions."

The applicable provisions of the banking code (Uniform Commercial Code, V.T.C. A.) cited by the parties are as follows: § 4.103, subdiv. (a)—"The effect of the provisions of this chapter may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable"; § 4.103, subdiv. (d)—"The specification or approval of certain procedures by this chapter does not constitute disapproval of other procedures which may be reasonable under the circumstances"; § 4.109—"The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank: (1) verification of any signature; (2) ascertaining that sufficient funds are available; (3) affixing a 'paid' or other stamp; (4) entering a charge or entry to a customer's account; (5) correcting or reversing an entry or erroneous action with respect to the item"; § 4.212, subdiv. (c)—"A depositary bank which is also the payor may chargeback the amount of an item to its customer's account or obtain refund in accordance with the section governing return of an item received by a payor bank for credit on its books (Sec. 4.301)"; § 4.213, subdiv. (a)—"An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: (1) paid the item in cash; or (2) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or (3) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or (4) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement. Upon a final payment under Subdivisions (2), (3) or (4) the payor bank shall be accountable for the amount of the item"; § 4.301, subdiv. (b)—"If a demand item is received by a payor bank for credit on its books it may return such item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in the preceding subsection"; and § 4.104, subdiv. (a)(8)—" 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." [3]

3. For a good discussion of the applicable provisions of the Uniform Commercial Code see Douglas v. Citizens Bank of Jonesboro, 244 Ark. 168, 424 S.W.2d 532 (Arkansas Supreme Court 1968), wherein it was held that a bank by stamping its endorsement on checks deposited by plaintiff's customer drawn on the account of another customer of the bank, and by delivering a deposit slip to plain-

■■ Plaintiff does not deny that many banks use "deferred posting" and acknowledges that under ordinary circumstances under the applicable provisions of the banking code, the defendant had a right to charge back the item here involved. She now asserts that by virtue of the conversations between Mr. Pusard and herself, defendant became obligated to honor the $6,500 check without reservations. Plaintiff did not plead any contractual agreement, made no effort to establish any, did not request any special issues in regard thereto, and tried the case on a negligence theory; and she is not now in a position to assert any such contractual agreement. In any event, the nature and extent of the conversations between plaintiff and Mr. Pusard and any resulting agreements entered into are disputed and conflicting, and at the most, they constitute a disputed fact issue.

Plaintiff did not establish as a matter of law that defendant violated any oral or written contract between them. Under the written agreements between plaintiff and defendants, and the applicable banking laws, the bank had a right to handle this transaction in the manner that it did. The trial court erred in granting plaintiff's motion for judgment non obstante veredicto.

The judgment of the trial court is reversed and judgment here rendered that plaintiff take nothing by her suit.

tiff's customer, did not accept such checks for payment and was free to revoke settlement in accordance with the Uniform Commercial Code. In such case the Court said:

"When we consider the statutes above referred to, it is clear that appellants cannot prevail. Clark, Bailey and Young, in their American Law Institute pamphlet on bank deposits and collections under the Uniform Commercial Code (January, 1959), p. 2, comments as follows:

" 'If the buyer-drawer and the seller-payee have their accounts in the same bank, and if the seller-payee deposits the check to the credit of his account, his account will be credited provisionally with the amount of the check. In the absence of special arrangement with the bank, he may not draw against this credit until it becomes final, that is to say, until after the check has reached the bank's bookkeeper and, as a result of bookkeeping operations, has been charged to the account of the buyer-drawer. (The seller-payee could, of course, present the check at a teller's window and request immediate payment in cash, but that course is not usually followed.) If the buyer-drawer's account does not have a sufficient balance, or he has stopped payment on the check, or if for any other reason the bank does not pay the check, the provisional credit given in the account of the seller-payee is reversed. If the seller-payee had been permitted to draw against that provisional credit, the bank would recoup the amount of the drawing by debit to his account or by other means.'

"The comment of the commissioners is also enlightening. Comment 4, under Section 85-4-213, states:

" 'A primary example of a statutory right on the part of the payor bank to revoke a settlement is the right to revoke conferred by Section 4-301. The underlying theory and reason for deferred posting statutes (Section 4-301) is to require a settlement on the date of receipt of an item but to keep that settlement provisional with the right to revoke prior to the midnight deadline. In any case where Section 4-301 is applicable, any settlement by the payor bank is provisional solely by virtue of the statute, subsection (1)(b) of Section 4-213 does not operate and such provisional settlement does not constitute final payment of the item.' "
424 S.W.2d at 534-535. See also Frost National Bank of San Antonio v. Dobbs, 423 S.W.2d 145 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.).