**Robert L. PRACHT, Appellant,**

v.

**OKLAHOMA STATE BANK, Appellee.**

**No. 50614.**

Supreme Court of Oklahoma.

March 27, 1979.

As Corrected April 10, 1979.

James M. Boring, Board & Boring, Guymon, for appellant.

M. Marcus Holcomb, Holcomb, Holcomb & Harkins, Buffalo, for appellee.

HARGRAVE, Justice:

The Plaintiff, now Appellant, Robert L. Pracht, brought this action to recover $6,571.25 from Defendant-Appellee Oklahoma State Bank of Buffalo. The damages sought from the Defendant represent the amount of a check charged back to the Plaintiff's account on the basis that it was drawn on uncollected funds.

The Plaintiff deposited the questioned check in his account with the Defendant Bank on January 17, 1975. It was payable to his order and drawn by Northwest Feedyards on its account with the same bank. The next day, January 18, 1975, a Saturday, Plaintiff received a deposit slip and notice of payment of a note, both dated Friday. The following Monday the account of Northwest Feedyards showed a balance of over $300,000.00. The Bank posted several checks against Northwest's account and also took a set off on a note on Tuesday, the 21st. Additional disbursements from Northwest's account depleted the account to the point that there were insufficient funds to pay Dr. Pracht's item originally drawn to pay for three loads of corn purchased by the Feedyard. The check was returned on the 21st as drawn on uncollected funds.

The Plaintiff filed a petition against the Defendant Bank alleging that on the 17th of January, 1975 the Defendant credited his account with the amount of the check issued by Northwest Feedyard against its account in the Oklahoma State Bank. The Plaintiff plead that on the 21st day of January, the Defendant charged back the item and that the Defendant was unauthorized to charge his account for the amount of the check or to return the item, and sought judgment for the amount of the item plus attorney fees and costs. The Defendant's answer alleged the check drawn by Northwest for deposit to Plaintiff's account was presented after banking hours on the 17th and was thus deemed to have been presented on the next banking day, Monday the 20th. Therefore, the midnight deadline for

the item was midnight on Tuesday, the 21st, and the check was properly returned before that deadline.

The cause was tried to the court with a jury sitting in an advisory capacity. The record contains no pretrial order inasmuch as no such order was filed in the cause. Be that as it may, pursuant to the pretrial hearing and decisions apparently made and agreed to therein, the court restricted the Plaintiff's case to a presentation of evidence relating to a single issue: Whether the questioned item arrived before or after that closing time. In his opening statement, and at other times during the trial, Plaintiff attempted to show that the $300,-000 in the Feedyard's account were final credits and not provisional settlements, and that the account had at all material times sufficient funds for payment of Plaintiff's item. The court and opposing counsel took the position that the submission of only the single issue of time of presentment was agreed upon at pretrial.

█ An examination of the transcript of the trial reveals to this Court that all parties realized the issues had been narrowed by agreement of counsel and the court's pretrial order. Save a motion to set for pretrial, the record contains no document or minute order relating to the pretrial. The only indication in the record of the stipulations and orders made at pretrial and their effect on the subsequent proceedings is the colloquy between counsel and the court at trial referring to the effect of the pretrial order. From the statements in the record it is apparent the effect of that order was concededly sweeping in scope. The court's position was that pretrial proceedings had confined the scope of the trial to the single question of time of presentment and the subsequent midnight deadline. In reviewing the judgment of a court of general jurisdiction error is never presumed but must be affirmatively demonstrated. *Raymer v. First National Bank of Berwyn,* 184 Okl. 392, 87 P.2d 1097 (1939). Therefore, when an offered error is not made to affirmatively appear, this Court will not disturb the judgment and verdict of the

lower court. *Industrial Building & Loan v. Ashlock,* 184 Okl. 551, 88 P.2d 874 (1939). The appellant bears the burden of demonstrating a sufficient record and applicable law to demonstrate in this Court that the trial court committed error since error in the lower court is not presumed. *Seidenbach's v. Crown Drug,* 191 Okl. 223, 127 P.2d 800 (1942); *Hebble v. Abernathy, Howell & Abernathy,* 180 Okl. 105, 67 P.2d 970 (1937). It has been broadly stated that error will never be presumed on appeal in a civil action but must be made to appear affirmatively or it will be presumed that no prejudicial error was committed by the trial court. *Cox v. Warford,* 34 Okl. 374, 126 P. 1026, 1027 (1912). In the light of this fundamental concept and in the absence of a pretrial order in the record, we will presume the trial court restricted the presentation of the case in accord with the pretrial order made in this action and therefore the Appellant's objection to this restriction in the light of the record presented on appeal is without merit.

█ Appellant asserts the court erred in finding the check was not presented for payment until after the close of business on Friday. In an action tried to the court with the jury waived, the finding of the court is as binding on appeal as the verdict of the jury and consequently if there is any competent evidence to support the finding it will not be disturbed on appeal. *Tulsa Auto Dealers Auction v. North Side State Bank,* Okl., 431 P.2d 408 (1967). There is competent evidence to support the finding that the check arrived at the bank after closing hours. The bank president testified to that effect. Additionally the party by whom the check was delivered to the bank testified that when he arrived at the bank the doors were locked and he was admitted after a locked door was unlocked. Other witnesses stated that the bank's computer was striking a balance at 3:00 P.M. Under such circumstances an allegation that the court erred in finding the check was presented after the close of business is without merit.

In several propositions the Appellant urges in substance that the bank accepted

the check; thus was not free to return the item to the payor and charge it back to the Plaintiff-payee by virtue of the fact the item was delivered to the bank and a deposit slip was issued therefor. The deposit slip issued the Plaintiff specifically subjects the deposit to the provisions of the Uniform Commercial Code. Title 12A O.S.1971, § 3–409 specifically provides that a check does not operate as an assignment of funds in the hands of the drawee bank.[1] The deposit slip provides the finality of the deposit is subject to receipt of final payment. Final payment under the Code is treated in 12A O.S.1971, § 4–213(1) and is defined as either payment in cash; settling for an item without reserving the right to revoke or having that right by statute; completing the process of posting the item to the account of the drawer or maker; or provisionally settling for an item and failing to make a proper and timely revocation of that settlement.[2] The trial was limited to proving or disproving the Defendant failed to make a proper and timely revocation of a provisional credit before the midnight deadline. The Bank had reserved the right to revoke the item, had not posted it to the account of the maker, and according to the finding of the Court and jury sitting in an advisory capacity, did not fail to revoke the settlement in the time and manner provided by law.

The depository bank handling an "on us" item (an item for which the bank is both the payor and depository bank) has the same right to revoke a provisional settlement, charging back the item as a payor bank. Title 12A O.S.1971, § 4–212(3). The payor bank's ability to charge back an item is governed by § 4–301(1). The payor bank handling an item for which it is the depository is restricted less than a simple payor bank in returning an item and charging it back because § 4–301(2) and § 4–302(a) omit the provision that a depository bank is accountable for an item which it retains beyond midnight of the *day of receipt* without settling for it. *Settle* under the Uniform Commercial Code is defined as provisional or final settlement. Title 12A O.S. 1971, § 4–104(j).

Section 4–301(1) of Title 12A Oklahoma Statutes allows a settlement to be revoked and payment recovered before final payment (under § 4–213(1) previously demonstrated not to have been made) and before the midnight deadline if action is taken to either return the item or to send written notice of dishonor or nonpayment. Admittedly the court's finding is erroneous in providing that the item was returned on Monday when it was actually returned on Tuesday. The parties and the record agree the item was returned on Tuesday. The fact that the record amply supports a finding that the item was presented for payment after business on Friday establishes that the item was deemed presented on the following banking day. § 4–107(2). The Bank did do some business after what was described as the close of business on Friday but that does not require a conclusion that the Bank was open for business as a matter of law. Title 12A O.S.1971, § 4–104(c) states that the banking day is measured by the period of time the bank is open for *substantially all* of its banking functions.

1. Title 12A O.S.1971, § 3–409(1). A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

2. Title 12A O.S.1971, § 4–213(1). An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
   (a) paid the item in cash; or
   (b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
   (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
   (d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
   Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.

The Appellant contends that issuance of a deposit slip is an additional act constituting final payment, although not mentioned as such in 12A O.S.1971, § 4–213(1). This contention has been raised in Arkansas, under the Uniform Commercial Code in the case of *Douglas v. Citizens State Bank of Jonesboro,* 244 Ark. 168, 424 S.W.2d 532 (1968). This Court agrees with the principle announced in that case; that issuance of a deposit slip does not constitute a final settlement for an item. Any other conclusion would destroy the Code's provisions in 12A O.S.1971, Article 4 Bank Deposits and Collections, that establish procedures for deferred posting and conditional settlement.

The Plaintiff also alleges the Bank was not authorized to debit the account of the Feedyard for obligations due the Bank unless and until the Bank had honored all previously received items drawn on the account of the Feedyard. Thus it is argued the Bank was required to pay Plaintiff's check prior to debiting the account of the Feedyard on obligations due and owing the Bank and is liable for failure to do so. As noted in *Port City State Bank v. American National Bank, Lawton,* Okl., 486 F.2d 196 (10th Cir. 1973), Oklahoma has no first-in first-out rule which is applicable to payment of an item out of the account of the bank depositor. Additionally, 12A O.S.1971, § 4–303(2) states that subject only to (1) of that statute, items may be paid, certified or charged to a customer's account in any order convenient to the bank.

Finally, 12A O.S.1971, § 4–303(1) provides the bank's right to set off against the account of the depositor is lost when it is exercised after the bank has accepted or certified the item, paid the item in cash, settled without reserving the right to revoke, completed the process of posting the item to the party to be charged, or has become accountable for the item by reason of late return. None of the conditions occurred prior to the bank's exercise of its right to set off, and under Section (2) of 4–303 the bank is accorded the right to pay items in any convenient order.

Under the record presented and the above appearing law, the trial court correctly refused to enforce the holder's demand that the drawer be held accountable for the $6,571.25 check, and the judgment for the Defendant is affirmed.

AFFIRMED.

LAVENDER, C. J., IRWIN,. V. C. J., and WILLIAMS, HODGES, BARNES and SIMMS, JJ., concur.

OPALA, J., concurring in result.

DOOLIN, J., disqualified.