Jerry Al BROWN et al., Appellants,

v.

ASGROW SEED COMPANY OF TEXAS,
Appellee.

No. 14254.

Court of Civil Appeals of Texas.

San Antonio.

April 1, 1964.

Rehearing Denied June 3, 1964.

Groce, Hebdon, Fahey & Smith, Charles L. Smith, San Antonio, for appellants.

James V. Graves, San Antonio, for appellee.

BARROW, Justice.

This suit was filed by appellants, Jerry Al Brown and his father, Joe Al Brown, d/b/a Brown & Brown, to recover damages from Asgrow Seed Company of Texas for loss of a watermelon crop because fertilizer produced by Bactex Fertilizer, Inc., and sold to appellants by appellee did not contain the specified ingredients. Asgrow cross-acted for judgment on a note given as payment for seed, fertilizer and crop-raising equipment sold appellants. The trial court granted Asgrow judgment non obstante veredicto and entered judgment that appellants take nothing on their claim for damages, and that appellee recover judgment on the note for principal, interest and attorney's fees.

The primary question presented by this appeal is whether the seller, who was neither the manufacturer nor dealer, impliedly warranted that the product sold contained the ordered ingredients. Under the record in this case, there was no implied warranty and the trial court properly rendered judgment for appellee.

Asgrow is a producer and wholesale supplier of seeds, which it sells under the

Asgrow label. It also sells items not produced by it which are allied to its seed business, such as jiffy pots, plant protectors and fertilizer. It is an authorized dealer for Armour Brand fertilizer. Jerry Brown is a graduate of Texas A. & M. College, with a major in horticulture, and in January, 1962, was Assistant County Agent of Bexar County. He testified as an expert witness on the use of fertilizer. Jerry and his father own a farm near Grapeland in Houston County and desired to raise a watermelon crop on this farm in 1962. Jerry Brown, in his capacity as Assistant County Agent, had met Walter Moss, sales manager for Asgrow, in the fall of 1961.

In January, 1962, Jerry Brown went to Asgrow's office in San Antonio to discuss a deal with Walter Moss, whereby Asgrow would sell Brown the seed, fertilizer and crop equipment necessary to raise watermelons and Brown would give a note in payment of same, payable in June, 1962. Fertilizer is produced under State regulations whereby all brands are required to contain a designated amount of plant food. The remainder of the formula is called "filler" and each producer selects his own type of filler, and the price of the product varies somewhat, depending on what is used as "filler." Brown desired 7 tons of 10–20–20 fertilizer for his plum trees, and 4 tons of 6–24–24 fertilizer for the watermelons. These are standard fertilizer formulas, calling for 10% nitrogen, 20% phosphate, 20% potash and 50% filler; and 6% nitrogen, 24% phosphate, 24% potash and 50% filler.

Moss quoted Brown prices on Armour Brand fertilizer and showed him a price list on Mathieson Brand fertilizer, which prices were comparable to Armour. Brown advised Moss that he wanted a cheaper price and Moss stated that they might get it from Bactex. Bactex Fertilizer, Inc., of San Antonio was a producer of fertilizer under Bactex and Satex Brands. Moss telephoned the Bactex Company and, in the presence of Brown, obtained prices which were about $10.00 a ton less than the Armour Brand. Brown admitted there was no express warranty, but urges an implied warranty.

Brown testified: "I had never heard of Bactex before that meeting there with Mr. Moss. And after he got the prices, he said, 'Well, now,' he says, 'Bactex had a little trouble last year with the State Board, the Feed and Fertilization Board, but' says 'recently they have been all right; they haven't had any trouble.' So I said, 'Well, what do you think?' 'Well, gosh, I don't know,' he said, 'I guess they will be all right.' And I thought the same thing. And I do recall that I specifically said, 'Well, isn't there a fertilization law in effect that would keep everything right?' And he said there was. And I said, 'Well, what do you—do you feel like it will be all right? I mean I am buying everything from you,' and he agreed. So that's where we got it." Brown later testified, "That he (Moss) felt of course he couldn't be sure and neither could anyone else, but he felt this was the case (that it would be all right)."

After the Bactex conversation, Jerry Brown told Moss he wanted to discuss the deal with his father and therefore did not order anything at that time. A few days later he contacted Moss and specifically ordered the Bactex fertilizer. He knew that the fertilizer would be delivered direct to his farm from the Bactex plant and would not be seen by Asgrow. Asgrow admitted it was paid a commission on the sale by Bactex.

The watermelon crop was a complete failure and there was evidence that a subsequent analysis of samples from each of these two types of Bactex fertilizer showed that they contained only a small fraction of the plant foods called for in the formulas.

There were twenty-five issues submitted to the jury but only six are pertinent to this appeal and are set out substantially

in footnote 1.[1] The jury found in other issues that appellants would in reasonable probability have netted the sum of $7,100.00 if the proper ingredients had been in the fertilizer. The remaining issues relate to contributory negligence findings found favorably to appellants. The trial court disregarded all answers except that to No. 6, which it found to have been undisputed, and further found that a directed verdict should have been granted appellee.

■ It is well settled that in order to establish an implied warranty by the seller that the article sold is reasonably suitable for the purpose for which buyer purchases it, there must be a justifiable reliance by the buyer on the seller's representation. McMorries v. Clardy, Tex.Civ.App., 232 S.W.2d 167; Bedner v. Dunigan Tool & Supply Co., 142 Tex. 663, 180 S.W.2d 919; Adams v. Bailey Transportation Co., Inc., Tex.Civ.App., 334 S.W.2d 591; 50 Tex.Jur., § 154; 77 C.J.S. Sales § 325(b); Williston on Sales, §§ 227, 233a, 234.

■ Appellants failed to secure a finding on this essential element of their case. The jury found in the only question bearing upon the issue of reliance, that at the time he executed the note, Jerry Brown knew, or by the exercise of ordinary care should have known, as much about the quality and usability of fertilizer delivered to him by Bactex as did Moss. It is significant that Brown was qualified by education, experience and vocation to formulate his own

opinion concerning the reliability of the various brands of fertilizer. Cf. Ruberoid Co., Inc. v. Briscoe, 5 Cir., 293 F.2d 712. He specifically ordered the Bactex brand with knowledge of all facts and from his independent decision after full opportunity to investigate. See Williston on Sales, § 236a. Brown knew that Asgrow's only connection with the fertilizer was to order the specified formulas from Bactex.

The statement of Moss concerning the advisability of purchasing Bactex Brand fertilizer amounted to no more than an opinion. In United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432, the Supreme Court quoted with approval the following rule from 55 C.J. 691: " 'The decisive test of whether there is a warranty is whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely declares his belief with reference to a matter on which he has no special knowledge and on which the buyer may be expected also to have an opinion, and to exercise his judgment; the former situation constituting a warranty while the latter does not.' " See also, 77 C.J.S. Sales § 310, Bell v. Bradshaw, Tex. Civ.App., 342 S.W.2d 185; Welch Veterinary Supply Co. v. Martin, Tex.Civ.App., 313 S.W.2d 111.

■ There is no merit in appellants' proposition that appellee should not recover on its cross-action because there was a failure of consideration for the note. It is well settled that a party aggrieved by a

1. The issues pertinent to this appeal are substantially set forth as follows:

No. 1. That the four tons of Satex Lawn and Garden Food 6–24–24 delivered to Brown & Brown by Bactex Fertilizer, Inc., failed to contain the percentage of ingredients as ordered by Jerry Al Brown.

Nos. 2 and 4. Such failure was a proximate cause of the failure of the watermelon crop on the 18.5 and 8.7 acre tracts.

No. 6. That at the time of execution of the note, Jerry Al Brown knew, or by the exercise of ordinary care should have known, as much about the quality and usability of the fertilizer delivered to him

by Bactex Fertilizer, Inc., as did Walter Moss.

No. 7. That the information Jerry Al Brown had as to the difficulties Bactex Fertilizer, Inc., had with the State Fertilizer Board the previous year regarding the reliability of its products was not sufficient to put him on notice to make an investigation before ordering Bactex and Satex fertilizer.

No. 23. That the seven tons of Bactex fertilizer, 10–20–20, delivered to Brown & Brown by Bactex Fertilizer, Inc., failed to contain the percentage of ingredients as ordered by Jerry Al Brown.

fraudulent transaction has alternate remedies, and may either rescind the sales contract so as to escape paying the consideration due, or affirm the transaction and recover his damages. Minneapolis-Moline Company v. Purser, Tex.Civ.App., 361 S.W. 2d 239; Talley v. Nalley, Tex.Civ.App., 277 S.W.2d 739; O'Con v. Hightower, Tex. Civ.App., 268 S.W.2d 321, writ ref. Here appellants elected to affirm the contract and sue for breach of warranty This cause of action failed, and appellants can not now avoid payment of the note given for the fertilizer specifically ordered by Brown. Dutch Mill Gardens v. Grullemans & Sons, Tex.Civ.App., 238 S.W.2d 232, writ ref.; 78 C.J.S. Sales § 443 p. 66.

The judgment of the trial court is affirmed.