**Curtis FIELDS, Appellant,**

v.

**Borden WORSHAM, Appellee.**

**No. 17755.**

Court of Civil Appeals of Texas, Dallas.

Jan. 28, 1972.

Rehearing Denied Feb. 17, 1972.

 

Pat McDowell, Maloney, Milner & McDowell, Dallas, for appellant.

Harlan Harper, Jr., Fanning & Harper, Dallas, for appellee.

**424**

CLAUDE WILLIAMS, Chief Justice.

Borden Worsham brought this action against Curtis Fields in which he alleged that he had contracted with Fields to remodel the bathroom and kitchen in his home for a fixed fee of $3,500. He contended that Fields had not performed the contract properly and that due to defective workmanship his house had been damaged in the sum of $2,097.96. Fields denied Worsham's allegations and filed a "cross-action" for the remainder of the fee he contended was due under the construction contract. It was his contention that the contract with Worsham was based upon cost of materials plus 25 per cent. In an amended petition Worsham reasserted his original cause of action, denied that the contract was for "cost plus" and for the first time alleged that Fields had "personally contracted business associates of the Plaintiff and attempted to defame his character" and that by virtue of such malicious defamation he was entitled to recover exemplary damages in the sum of $2,500 in addition to his actual damages for breach of contract.

The court submitted the case to the jury on special issues and in response thereto the jury found: (1) that the act on the part of Fields in sending the letter dated April 28, 1970 in which it was asserted that Worsham refused to pay his just debts and that certain property investments might be involved if his obligations were not fulfilled, tended to injure the reputation of Worsham and exposed him to injury or mental suffering; (2) that the sending of the letter tended to impeach the honesty and integrity of Worsham; (3) that the sum of $650 would reasonably compensate Worsham for the financial injury and mental suffering resulting from the letter; (4) that there were "remedial defects" in workmanship on Worsham's house in connection with the shower or bathroom; (5) that $1,105.74 would be a reasonable cost to repair such "remedial defects" in the bathroom; (6) that there were "remedial defects" in connection with the kitchen, den and breakfast room; (7) that the sum of $300 would be the reasonable cost to repair such defects; (8) that Fields did not contract with Worsham to do the work on the basis of cost, plus 25 per cent; (9) that Worsham is indebted to Fields in the sum of $160 for the contracting work done on Worsham's house; (10) that no attorney's fees should be awarded attorney for Fields; (11) that the statements contained in the letter written by Fields were not true; (12) that the statements contained in the letter written by Fields were not privileged; (13) that the statements contained in the letter written by Fields were intended to inform the business associates that property owned by them with plaintiff might be placed in jeopardy; (14) and (15) that Worsham contracted with Fields to do the remodeling work on the bathroom and kitchen area in the Worsham home for a total of $3,500.

Based upon this verdict the trial court rendered judgment in favor of Worsham and against Fields in the sum of $1,895.74.

Fields appeals and assigns twenty-three points of error which are grouped in six categories.

In his first three points of error appellant contends that the judgment should be vacated because of jury misconduct. At the hearing on this question three jurors testified. Appellant produced the juror Bowling who related that there was a great deal of discussion in the jury room concerning the meaning of the phrase "tended to harm the reputation of the plaintiff" which was contained in special issue No. 1; that the jurors did not understand the meaning of these words and discussed the same for about two hours and that after the jury finally answered the issue or issues on defamation one or more jurors made the statement that Fields was not believable under any circumstances because he had been found guilty of defamation. He said that it was his opinion that the jury answered the remainder of the special issues relating to the contract and

the "cross-action" on the basis that they did not believe Mr. Fields was telling the truth because they had found against him on defamation. He said some of the jurors related their personal experiences with contractors and that one lady juror said that "All contractors are crooks." It was his opinion that the verdict was arrived at as a result of passion and prejudice on the part of the jurors. On cross-examination he admitted that he had advised the court that he had arrived at his verdict based solely on the evidence and the law as given by the court.

Appellee produced two jurors. The foreman Gravitt testified that while there were some expressions of personal experiences made by various jurors that on each occasion he, as foreman, would admonish the jury not to consider such statements and to stick to the evidence and the law as given by the court. The jury was confused concerning the first issue but after receiving additional instructions from the court the jury answered the question and proceeded to answer the remainder of the questions contained in the charge. He said that each juror agreed to each answer before the verdict was returned into court. The juror Wright could not recall specific expressions of personal belief on the part of jurors but did recall some generally which did not influence her at all. She said the foreman would admonish the jury on each occasion to disregard personal experiences and remarks and stick to the law and the evidence.

Several reasons are apparent why appellant's contentions of jury misconduct must be overruled.

■ (1) The burden was cast upon appellant asserting jury misconduct not only to prove by a preponderance of the evidence that such misconduct occurred, but also a showing that such misconduct probably resulted in injury to him. Where the evidence presented to the trial court was conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court on that question is accepted as final. The trial court impliedly found that the misconduct did not occur and we cannot say that in doing so the court abused its discretion. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup.1969); Texas v. Wair, 351 S.W.2d 878 (Tex.Sup.1961); Brawley v. Bowen, 387 S.W.2d 383 (Tex. Sup.1965);

■ (2) From an examination of the entire record appellant did not discharge his burden of proving probable harm. Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup.1969); Pope, Jury Misconduct and Harm, XII Baylor L.Rev. 355–357 (1960);

■ (3) Since the alleged misconduct was immediately rebuked by the jury foreman each time it occurred any error reflected was harmless. Rule 434, Texas Rules of Civil Procedure; Cargo Ships & Tankers, Inc. v. McDonald, 435 S.W.2d 866 (Tex.Civ.App., Beaumont 1968); and cases therein cited; and

■ (4) It is not permissible for a juror to impeach or destroy his verdict by testifying to his mental processes or those of other members of the jury by which the verdict was reached. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Butler v. Haynes, 426 S.W.2d 642 (Tex.Civ.App., Beaumont 1968, writ ref'd n. r. e.).

In his next group of points, 4 through 7, inclusive, appellant complains of the manner of submitting special issue No. 1 and also the sufficiency of the evidence to support the jury's answer thereto.

Special issue No. 1, as submitted by the court, is as follows:

"Do you find from a preponderance of the evidence that the sending of the letter of April 28, 1970, asserting that 'Borden Worsham refused to pay his just debts, for which the suit had been filed,'

and that the property investments of Jordan and Lowry might be involved if he didn't pay such obligations, tended to injure the reputation of the Plaintiff Borden Worsham and thereby exposed him to financial injury or mental suffering?"

In response the jury answered "Yes".

■ Appellant timely objected to the submission of this issue on the grounds that same was multifarious and global in nature. We cannot sustain appellant's contention based upon the particular objections urged to the submission of the issue. Our Supreme Court in Haas Drilling Co. v. First Nat. Bank in Dallas, 456 S.W.2d 886 (1970), reiterated the rule previously announced in Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W. 2d 99 (1953), to the effect that in cases other than negligence great latitude is permitted in the wording of special issues so that in such cases there will be no reversal simply because the issue is too broad. We are not presented with the question of whether the issue, as framed by the court, is confusing and ambiguous because of the disjunctive method of submission. We therefore do not discuss this possible error.

■ Our examination of the record convinces us that there is some evidence of probative value to support the jury's answer that the letter "exposed him to financial injury or mental suffering." While we are unable to find any evidence in the record that appellee actually suffered any financial injury as a result of the letter yet there is some evidence which might justify the finding concerning mental suffering. Accordingly, we overrule appellant's points 4 through 7, inclusive.

In his points 8, 9 and 10 appellant assails the answers of the jury to special issues 11, 12 and 13 as being contrary to the great weight and preponderance of the evidence. These issues have to do with the truthfulness of the contents of the letter written by appellant as well as the quali-

fied privilege thereof. We have carefully examined the record and find some evidence of probative force to justify the answer of the jury to each of the issues.

By his points 12 and 13 appellant attacks the submission and the jury's answer to special issue No. 3 which was as follows:

"What sum of money, if any, paid now will reasonably compensate the Plaintiff Borden Worsham for the financial injury, if any, and for mental suffering, if any, directly and proximately resulting from the sending of the said letter of April 28, 1970, asserting that Borden Worsham had refused to pay his just debts, and that the property investments of Jordan and Lowry might be involved?"

In answer to this issue the jury found "$650.00".

This was the only damage issue submitted by the court on the libel phase of the case. It should not have been submitted at all for the simple reason that appellee did not seek to recover actual damages for the alleged libel but confined his recovery solely to the recovery of exemplary damages. In his amended pleading the appellee, after alleging damages for breach of the construction contract, and after alleging the facts concerning defamation of character, said: "For these acts of defamation the Plaintiff seeks exemplary damages of $2,500.00 * * *." It is therefore obvious to us that the trial court submitted the damage issue as to libel on the wrong theory.

■ Defamatory language may be actionable per se, that is, in itself, or it may be actionable per quod, that is, only on allegation and proof of special damages. 36 Tex.Jur.2d, "Libel and Slander", § 2, p. 280. To be libelous per se the written or printed words must be so obviously hurtful to the person aggrieved by them that they require no proof of their injurious character to make them actionable. Rawlins v.

McKee, 327 S.W.2d 633 (Tex.Civ.App., Texarkana 1959, writ ref'd n. r. e.).

The writing complained of in this case was a letter dated April 28, 1970 written by Curtis Fields and addressed to J. W. Jordan, Jr. and Robert W. Lowry who were business associates of Worsham. In the first paragraph of the letter the parties are notified of the pendency of a suit against Worsham. The letter then continues to state the suit is "for his refusal to pay his just debts on the repair of his home. He does not seem to want to take care of his obligations from a business standpoint. We thought you should be made aware of this seeing that you all are in on some property investments of which his part could become involved if he doesn't or can't meet his obligations." Mr. Lowry testified that upon receipt of the letter he was "concerned about his investment" but took no action; that the property mutually held by the parties was not sold for the reason that it had no market at the time. There is no testimony as to a diminution in value of the property because of the letter or that any outsider had refused to buy the property because of the contents of the letter. Jordan was not called to testify.

We have concluded that the words written by Fields and conveyed to Jordan and Lowry do not constitute libel per se so that proof of actual damages must be made to support the action. In this instance we find no evidence of actual damages sustained by Worsham as a result of the writing of the letter. If we be mistaken then certainly the evidence is wholly insufficient to support the answer of the jury to special issue No. 3. We sustain appellant's points 12 and 13.

Appellant's points 11, and 14 through 21, inclusive, all attack the sufficiency of the evidence to support the jury's answers to issues Nos. 2, 8, 14, 15, 9, 4, 6, 5 and 7. These issues mainly concern the questions relating to whether the contract to remodel was on a cost plus basis, as contended by appellant, or on a fixed fee basis, as contended by appellee. A great mass of testimony was introduced on these issues and it would serve no useful purpose to detail the testimony. Sufficient to say the evidence was conflicting and the jury exercised its prerogative in resolving the conflict. We cannot say that the evidence was so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

In his point of error No. 22 appellant assails the answer of the jury to special issue No. 10 as being contrary to the great weight and preponderance of the evidence. In this issue the jury was asked to state the sum of money which should be awarded appellant's attorney as a reasonable attorney's fee. In response the jury answered "None". The only testimony concerning attorney's fees came from appellant's attorney who said that a reasonable fee would be $1,600 for the services he performed. Appellee offered no counter evidence. We have concluded that the jury's answer of "None" was contrary to the great weight and preponderance of the evidence. This is obvious in view of the undisputed testimony concerning the large volume of work performed by appellant's counsel as well as the fact that the jury awarded appellant some money which was offset against appellee's claim. We sustain appellant's point 22.

We overrule appellant's point 23 in which he complains of the failure on the part of the court to define the term "malice" in the court's charge. An examination of the record reveals that appellant did not make such an objection to the charge. The only objection in this record is that the court should have submitted an issue on malice but no point is brought forward complaining of failure to do so. Moreover, appellant waived any possible com-

plaint concerning this omission by not tendering to the court a proper definition of the term requested. Rule 279, T.R.C.P.

The judgment of the trial court is reversed and remanded.