**Lloyd LIGON and Ralph Cannon, dba Master Burglar Alarm, Appellants,**

v.

**CHAS. P. DAVIS HARDWARE, INC., Appellee.**

**No. 12008.**

Court of Civil Appeals of Texas, Austin.

March 14, 1973.

Bob Kuhn, Austin, for appellants.

John H. Akin, Pearce & Smith, Austin, for appellee.

SHANNON, Justice.

Appellee, Chas. P. Davis Hardware, Inc., sued appellants, Lloyd Ligon and Ralph Cannon, doing business as Master Burglar Alarm Company, in the district court of Travis County for breach of implied warranty and contract. Appellee claimed, in general, that it sustained a loss resulting from a defective burglar system installed by appellants. Upon trial to the court, judgment was entered for appellee for $1,520.63. We will affirm that judgment.

On June 1, 1971, appellants installed a burglar alarm system for appellee's Congress Avenue store. For that installation appellee paid $827.00 and agreed to pay appellants $15.00 each month to keep the system in proper working condition. Under the agreement, appellants would service and monitor the equipment and "keep it going." The alarm system was characterized as "ultrasonic", and if functioning properly, would detect the presence of a person in the store and register an alarm in appellant's office. The appellants, or their agents, would then telephone the police who, depending upon the circumstances, could arrive at the store within four to six minutes.

During the evening of August 29, 1971, appellants' alarm system suffered a bold thief to break through an old elevator shaft at the back of the store building, enter and steal four shotguns, and pass back without sounding any warning alarm.

Appellee pleaded that appellants breached an implied warranty that the alarm system was fit for its particular purpose, and also that appellants breached an express contract to keep that device functioning properly. Appellants' primary defense to appellee's allegations was that the alarm equipment was not defective, but rather the equipment was turned down to a low level, at appellee's request, to keep bats from causing the alarm to be given.

Upon request, the court filed findings of fact and conclusions of law, and determined that appellants had a duty to furnish and maintain a burglar alarm system which would perform the function for which it was supplied by appellants and received by appellee.

Appellants assail the judgment by three points of error, the first being that court's finding that the burglar alarm system was defective and not fit for the purpose intended was contrary to the great weight and preponderance of the evidence. Points of error two and three complain of the court's findings that appellants breached the service agreement, and that the breaches of the implied warranty and the service agreement proximately caused appellee's loss, were contrary to the great weight and preponderance of the evidence.

Charles P. Davis, the president and majority stockholder of appellee, was appellee's principal witness. He testified that the place of entry of the thief was about two hundred and eighteen feet from the gun department. A sensing device of the alarm system was a bare ten feet from the gun display counters. When Davis tested the system the morning after the burglary, he said, "It done nothing." According to Davis, appellants told him that the alarm "faded away", and, "that it just went down on its own accord and lost contact."

Ligon admitted that the alarm equipment "did fade down some". This was so, he said, because Davis' employee, Claude Jackson, had insisted that it be turned down "way too low, trying to get rid of the bat problem."

The bat population in the store garrett became a "problem" because their flight at night near the sensing devices, on occasion, caused the alarm to be sounded. According to Cannon, Claude Jackson became irritated after having been aroused several times by the bats tripping the alarm, and required that the equipment be turned down to the lowest capacity to prevent the movement of the bats to cause the alarm to be given. Cannon said that he warned Jackson that the equipment, at that level, was operating in a "danger zone". Jackson contradicted Cannon's testimony.

When asked if the alarm system would have detected any burglars on August 29, had it been operating properly, and had it been properly adjusted, appellants' employee, Lyle Duncan, replied, "It would have definitely—yes, sir, very definitely."

Findings of fact by the court are comparable to a jury verdict upon special issues, and when supported by some competent evidence those findings will not be

disturbed on appeal. 4 McDonald, Texas Civil Practice, § 16.05 (Rev.Ed.1971). We are satisfied from an examination of the statement of facts that the findings complained of in point of error one and two are supported by competent evidence.

The evidence detailed above is applicable to appellants' third point of error relating to their claim that the court's finding that the breaches of the implied warranty and service agreement caused appellee's loss was contrary to the great weight and preponderance of the evidence. In addition to the previously reviewed evidence, appellant Ligon, on cross examination, testified that had the alarm system been working properly, there was a ninety percent chance that the thief would have been caught and appellee's loss thereby averted.

Tex.Bus. & Com.Code § 2.714(c) and § 2.715(b), V.T.C.A. provide that, in a proper case, the buyer may recover for consequential damages proximately resulting from a breach of warranty. Ordinary contract law, at least from the time of Hadley v. Baxendale, 9 Ex. 341 (1854), has provided that losses are recoverable which were fairly and reasonably within the contemplation of the parties at the time of the formation of the contract.

Appellants furnished the alarm system and entered into the service agreement to protect appellee from a burglar being in appellee's store undetected. It is undisputed that the system did not sound an alarm on August 29. Had the alarm system worked properly, appellant Ligon's testimony was that there was a ninety percent chance that the thief would have been apprehended, and the loss averted.

With respect to foreseeability, there is evidence to support the view that appellants could have reasonably foreseen that, if the alarm system did not operate properly, a burglar could enter and leave appellee's store unmolested and that appellee, on that account, could suffer loss. We are of the further opinion that the evidence sup-

ports the view that the loss suffered was one which was fairly and reasonably within the contemplation of the parties at the time they entered into the service agreement.

The judgment of the trial court is affirmed.