**LANPHIER CONSTRUCTION COMPANY and Servtex Materials Company, Appellants,**

v.

**FOWCO CONSTRUCTION COMPANY et al., Appellees.**

**No. 864.**

Court of Civil Appeals of Texas, Corpus Christi.

April 3, 1975.

Rehearing Denied April 24, 1975.

Richard J. Hatch, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, Bruce

Waitz, Waitz, Bretz & Collins, San Antonio, for appellants.

Ben F. McDonald, McDonald, Spann & Smith, Richard A. Hall, Jr., Branscomb, Gary, Thomasson & Hall, Cecil D. Redford, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit for damages arising from an alleged breach of contract and breach of warranty, express and implied, growing out of the construction of the Alice High School at Alice, Texas. Lanphier Construction Company, the general contractor, brought suit against its sub-contractor, Fowco Construction Company, Inc. and its surety, Fidelity and Deposit Company of Maryland, for damages which Lanphier suffered when the paving material, laid by Fowco, proved to be defective. Fowco and Fidelity, in turn, brought suit against Fowco's supplier, Servtex Materials Company, claiming that it breached both express and implied warranties as to its product. Trial was to the jury on special issues: the jury found that the reasonable and necessary sum which Lanphier was required to spend to remedy the defect amounted to $20,000.-00; that Servtex had breached both express and implied warranties and that the sum necessary to correct the defects resulting from these breaches was $20,000.00. The trial court, upon the verdict, entered its judgment that Lanphier recover $20,000.00 from Fowco less a credit to Fowco for $1,200.00 for extra work and less $6,665.00 for the retainage held by Lanphier and that Fowco recover over and against Servtex the sum of $20,000.00. The record is voluminous (over 2000 pages in the Statement of Facts). The case actually represents two separate appeals: 1) Lanphier Construction Company and 2) Servtex Materials Company. Lanphier contends in effect that it was entitled to more money and Servtex contends that it does not owe anything.

Lanphier Construction Company was the general contractor for the erection of a high school for Alice Independent School District, Alice, Texas. The architects on the job were the firm of Swanson, Hiester, Wilson & Boland hereinafter referred to as architects. Lanphier initially sublet the site work to C. R. M. Contractors hereinafter called C. R. M. on January 8, 1969, including the asphalt paving, prepaving the subgrade, site fill, site excavation, curbs and gutter, gutter, precast curbs, stripping, concrete pipe culverts and fine grading site. Fidelity and Deposit Company of Maryland issued a performance and payment bond as surety for C. R. M. C. R. M. began the work and partially performed the job by preparing the subgrade and site excavation. Prior to the laying of the asphalt, C. R. M. defaulted and abandoned the job. Fidelity and Deposit Company of Maryland advertised for bids to complete the defaulted contract and sent out invitations for bids on February 25, 1970. Fowco Construction Company, Inc. hereinafter referred to as Fowco was the successful bidder. In accordance with the requirements of the bond, Lanphier entered into a new sub-contract with Fowco for the completion of the defaulted contract work on March 16, 1970. Fowco was to furnish all labor, material and equipment necessary for the completion of all work that was not completed by C. R. M., the original subcontractor. Fowco's bid on the job was in the amount of $66,652.00. Fidelity and Deposit Company of Maryland issued a performance and payement bond as surety for Fowco.

According to the specifications, Fowco was required to use Hot mix-Hot laid asphalt Type DD on those areas to be paved. Fowco found that the Hot mix-Hot laid material was unavailable at the time the asphalt was needed and requested permission from the architects to use a substitute material. Permission was given allowing Fowco to substitute hot mix-cold laid asphaltic concrete upon the condition that the substituted material would meet Texas

Highway Department Specifications 352. Fowco, as a condition to placing its order required of Servtex a notarized certificate that its material would meet such specifications. On April 20, 1970, Servtex delivered said certificate to Fowco which was in turn delivered to the architects. Fowco thereafter ordered 1,900 tons of the asphalt from the Servtex Plant in Comal County, Texas. The material in question was manufactured by Servtex and shipped by rail to Alice, Texas, in five separate shipments beginning on April 18, 1970. The last shipment was received June 10, 1970. The materials were unloaded and stockpiled beside the railroad tracks, then loaded into dump trucks and hauled to the job site. Fowco began laying the material on April 27, 1970, and completed laying it on June 12, 1970. In laying the material, Fowco used three types of machines; a Layton laydown machine; a Barber-Green laydown machine; and a motor grader. Upon completion of the job, Fowco received 90% of its contract price leaving a retainage of $6,665.20 due from Lanphier Construction Company. Shortly after completion, the asphalt paved portion of the work began to show defects.

The architects, as agents for the school board, in a letter to Fowco dated September 1, 1970, demanded that Lanphier correct the defects by removing the asphaltic concrete paving then in place in the drives and parking lot; remove all debris from the site; reshoot the base to grades as shown on plans and compact same; apply new prime and tack coat per specifications; and install a new wearing surface of Hot mix-Hot laid equal to 1962 Texas Highway Specifications item 346, Class AA type D. Lanphier gave notice, in accordance with its contract, to Fowco, to redo the work as required by the architects. Fowco refused to redo the job. Lanphier then, without taking any other bids, on September 21, 1970, contracted with Heldenfels Brothers Contractors for the sum of $29,450.00 to take up the existing surface, recompact the base, lay a prime coat and lay a new surface. Heldenfels removed the Servtex asphalt and installed its own asphalt achieving satisfactory results. The evidence showed that as of the date of trial, the asphalt was in satisfactory condition. Lanphier paid Heldenfels the $29,450.00 in accordance with their contract. In addition, Lanphier contracted with Parking Control Company for the restripping of the parking lot and paid them $638.40.

Lanphier then brought suit against Fowco and Fidelity and Deposit Company of Maryland as defendants for the recovery of the aforesaid $30,088.40 ($29,450.00 + $638.40) for breach of Fowco's contract. Fowco answered and sued everyone involved. Fowco filed a cross action against Lanphier and Glen Falls Insurance Company (Bonding Company for Lanphier) for the retainage of $6,665.20 and for $1,200.00 alleged to be extra work. Fowco filed a cross action against Fidelity and Deposit Company of Maryland, alleging that if there were any defects, they were the fault of C. R. M. (sub-contractors) and not Fowco, and impleaded C. R. M. as a third party defendant. In addition, Fowco filed a third party action against Servtex for breach of express and implied warranty of fitness of the materials purchased by Fowco from Servtex. Finally, Fowco impleaded the architects, Swanson, Hiester, Wilson and Boland, as third party defendants, alleging a cause of action against them for negligent design as well as other theories. Fidelity and Deposit Company of Maryland answered and sought recovery over against Fowco for any amount which Lanphier might recover against it and also impleaded Lewis A. Fowler as a third party defendant, seeking a like recovery on his indemnity agreement. The architects went out of the case on their motion for instructed verdict. Trial was to the jury, which returned a special issue verdict in favor of Lanphier for $20,000.00 and against Fowco and Fidelity and Deposit Company; in favor of Fowco, on its third party action against

Servtex (who furnished the material), for breach of both express and implied warranties fixing the damages at $20,000.00; and in favor of Fowco on Fowco's cross-action against Lanphier for the recovery of $1,200.00 for extra work. The court then entered its judgment·in accordance with the jury's verdict as follows:

(1) In favor of Lanphier against Fowco and Fidelity and Deposit Company for $20,000.00.

(2) In favor of Fowco against Servtex for $20,000.00.

(3) That Lanphier's judgment against Fowco and Fidelity and Deposit Company be credited with the retainage held by Lanphier, in the amount of $6,665.00 and that said judgment be further credited with the value of the extra work in the amount of $1,200.00.

(4) In favor of Fidelity and Deposit Company against Fowco and Lewis A. Fowler, jointly and severally, for the sum of $20,000.00 by way of indemnity with respect to the judgment recovered against Fidelity and Deposit Company of Maryland by Lanphier Construction Company.

From this judgment, Lanphier Construction Company and Servtex Materials Company have perfected their appeals.

### "LANPHIER'S APPEAL"

■ Appellant Lanphier's first point of error is that the trial court erred in its failure and refusal to disregard the jury's answer to Special Issue No. 1, and to grant judgment non obstante veredicto to Lanphier for the full amount of the $30,088.40 sum expended by Lanphier to correct the defective work. Special Issue No. 1 reads as follows:

### "ISSUE NO. 1

Find from a preponderance of the evidence the *reasonable and necessary sum of money,* if any, required to be expend-

ed by Lanphier Construction Company to correct the defective and unacceptable asphalt paving job performed at the Alice High School by Fowco Construction Company.

Answer in dollars and cents, if any.

Answer: *$20,000.00"* (Emphasis supplied).

Appellant Lanphier relies heavily on the case of Page v. Travis-Williamson County Water Control and Improvement District No. 1, 367 S.W.2d 307 (Tex.Sup.1963). In that case, a jury issue was submitted as to the reasonable cost of the work and materials necessary to remedy the deficiencies, and the jury found that the reasonable and necessary cost was $14,990.00 rather than the actual cost expended by the water district owner of $39,234.07. The appellate court reformed the judgment holding that the actual cost of completion ($39,234.07) rather than the reasonable cost of completion was the proper measure of damages with such holding being upheld by the Supreme Court. It may be true that the issue as submitted was objectionable. However, Rule 274, Texas Rules of Civil Procedure, requires that the party complaining must point out distinctly the matter to which he objects and the grounds of his objection otherwise such objection shall be deemed waived. Allen v. American National Insurance Company, 380 S.W.2d 604 (Tex.Sup.1964); Cox v. Huffman, 159 Tex. 298, 319 S.W.2d 295 (1959); Frozen Foods Express v. Odom, 229 S.W.2d 92 (Tex.Civ.App.—Eastland 1950, writ ref'd n. r. e.); Steinberg v. Medical Equipment Rental Services, Inc., 505 S.W.2d 692 (Tex.Civ.App.—Dallas 1974, no writ); Graham Construction Company v. Robert H. Pyle, Inc., 422 S.W.2d 485 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). Appellant Lanphier's first point of error is overruled.

■ Appellant Lanphier's second point of error is that the trial court erred in its failure and refusal to disregard the jury's

answer to Special Issue No. 1 for the reason that there was no evidence or insufficient evidence to support such finding by the jury. Although the point of error is multifarious, we will consider appellant's point. In deciding the question of whether there is evidence of probative force to support a jury finding, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. In deciding appellant's insufficient evidence point, we are required to view all the evidence, both that favorable to the verdict and that contrary thereto. Garza v. Alviar, 395 S. W.2d 821 (Tex.Sup.1965); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

The appellee called an expert witness, H. D. Bailey, a contractor, who has been in the asphalt business for a period of 37 years. He testified to certain mathematical computations concerning the reasonable and necessary cost of redoing the job. Bailey stated that the equipment would probably be leased on an hourly basis and that about a nickel a square yard of primer would be necessary, amounting to about $1,500.00. Bailey testified that the job would have taken 1500 to 1600 tons of asphalt with a cost of $1.75 to $2.00 per ton and that it would cost about $3,000.00 to lay it. Bailey testified that the asphaltic concrete would have cost about $10.00 per ton delivered to the job amounting to $15,000.00 giving a total of $19,500.00. Bailey stated "this would be a reasonable cost within ten per cent."

Lanphier entered into a contract, absent competitive bidding, with Heldenfels Brothers on September 24, 1970, to redo the unsatisfactory work for a fixed sum of $29,450.00. Lanphier paid Heldenfels Brothers the sum of $29,450.00 by check upon completion of such work. The parking area had to be restripped by reason of the work being redone at a cost of $638.40. Heldenfels testified that he believed that $29,450.00 was a reasonable charge for such work. We have reviewed the entire statement of facts in this case (including all the evidence in support of the jury's answer and that which was contrary to the verdict); we are satisfied that the evidence is sufficient to support the jury's finding that the reasonable and necessary sum of money required to be expended by Lanphier to correct the defective asphalt paving job was $20,000.00. Appellant Lanphier's second point of error is overruled.

■ Appellant Lanphier's third point of error is that if the trial court did not err in disregarding the jury's answers to Special Issue No. 1, then the trial court erred in deducting the retainage of $6,665.20 after the jury had already deducted the same in deriving its answer to Special Issue No. 1. Lanphier contends that the jury did in fact deduct the $6,665.20 retainage in reaching the figure of $20,000.00 as did the court, creating a situation by which Lanphier's judgment against Fowco was credited twice with the amount of $6,665.20. Lanphier, in his amended motion for new trial, attached the affidavits of two of the jurors in which they stated they had deducted the retainage figure of $6,665.20 in reaching the final sum of $20,000.00.

No other jurors submitted affidavits nor was there testimony by any other jurors as to how they reached their verdict. Yet Lanphier alleges that each individual juror agreed to the deduction of the retainage amount prior to the finding of the $20,000.-00 sum. Appellant Lanphier has advanced no authority for its contention that the trial court erred in deducting the retainage of $6,665.20, nor have they alleged or proved that such occurrence constituted jury misconduct. Appellant's third point of error can at most be construed as a jury misconduct question and will be treated as such. First of all, we believe that appellant is inquiring into the mental process of the jurors rather than alleging some overt act by the jurors constituting jury misconduct. 56 Tex.Jur.2d, Trial, § 344, p. 709

(1964). We have reviewed the testimony elicited from the two jurors along with their affidavits and conclude that such relates only to the mathematical, mental reasoning process used by them reaching their verdict. Such testimony was the result of direct inquiry into the mental processes of the jurors concerned and therefore cannot be considered by the trial or appellate courts in determining the probable effect of misconduct upon the verdict of the jury. Putnam v. Lazarus, 156 Tex. 154, 293 S. W.2d 493 (1956); Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S. W.2d 646 (1957); Fields v. Worsham, 476 S.W.2d 421 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); Hanover Insurance Company v. Hoch, 469 S.W.2d 717 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.).

■ The trial court, by overruling appellant Lanphier's motion for new trial, impliedly found that the misconduct did not occur. Such implied finding, we believe, is supported by the evidence and is binding on the appellate courts. State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217 (1958); Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.1965). Appellant Lanphier's third point of error is overruled.

Appellant's fourth point of error was that the trial court erred in its refusal and failure to disregard the jury answers to Special Issues Numbers 12, 13 and 14 because the question of whether or not such "ramp" was or was not included in the contract work as a matter of law is to be determined by the court rather than the jury. Special Issues 12, 13 and 14 read as follows:

"Issue No. 12

Do you find from a preponderance of the evidence that Fowco built a ramp and a ramp walkway at the Alice High School job?

Answer: *Fowco did.*

Issue No. 13.

Do you find from a preponderance of the evidence that the ramp and ramp walkway built by Fowco, if you have so found, were not included in the Lanphier Construction Company contract documents?

Answer: *They were not included.*

Issue No. 14

Find from a preponderance of the evidence the reasonable value of the ramp and ramp walkway, if you have so found it to have been built by Fowco?
Answer: *$1,200.00*"

■ Appellant Lanphier duly objected to the submission of the above special issues. The question before us is whether Special Issues 12, 13 and 14 as submitted to the jury were law questions. In the case of Housing Authority of City of Dallas v. Hubbell, 325 S.W.2d 880 (Tex.Civ.App. —Dallas 1959, writ ref'd n. r. e.), a similar situation existed. In that case, plaintiff submitted 11 special issues to the jury inquiring whether certain work done by the contractors constituted extra work not required by terms of the contract or whether said work was required to be done as part of the contractor's obligation in the performance of the contract. The court held such issues submitted a question of law and stated:

"To ask the jury whether certain work was extra work is to ask the jury whether said work was required to be done as part of Contractor's obligation in the performance of the contract, or whether the work was not required by the terms of the contract, but was in addition to the work required by the contract. Thus the jury is called on to interpret the written contract."

In the case at bar, Special Issue 13 required the jury to interpret the contract. Lanphier's objection to submission of said Special Issue No. 13 should have been sus-

tained. However, in reviewing the record and statement of facts, it is undisputed that the construction of the ramps by Fowco was not required to be done by the contract entered into between Lanphier and Fowco. The original sub-contract between C.R.M., the sub-contractor, and Lanphier required C.R.M. to construct the asphalt paving, paving base, preparing subgrade, site fill, site excavation, curbs and gutters, pre-cast curbs, stripping, concrete pipe culverts and fine grading site. There was no mention or indication in that contract that C.R.M. was to construct "ramps". When Fowco took over the job, included in such contract was the following job description:

> "To furnish all labor, materials and equipment necessary for the completion of all work that has not been completed by CRM contractors, Inc. former subcontractor, that included asphalt paving, paving base, preparing subgrade, site fill, site excavation, curbs and gutters, pre-cast curbs, stripping concrete pipe culverts, fine grading, (change order #1), sidewalks, (change order #3) revision of entrance at Sunset Blvd., and change order #4, Revision of curb and culvert."

Again, there is no mention nor indication that ramp work was included in the contract. The specifications made no mention of ramps. We hold that the trial court properly entered its judgment that Fowco was entitled to a credit of $1,200.00, such being the reasonable cost of the work done by Fowco in addition to its contractual duties. If there was error in the submission of Special Issue No. 13, it was harmless error. Rule 434, Tex.R.Civ.P.

■ Special Issues Numbers 12 and 14 were questions of fact. Both Fowco and Lanphier contend that the ramps were built by them. There was sufficient evidence introduced that the charge of $1,200.00 was a reasonable cost. These issues were properly submitted to the jury and the trial court was correct in overruling Lanphier's objection as to these issues. Since there was a conflict as to who built the ramps,

and such was a fact question, it was properly submitted to the jury.

Appellant Lanphier's fifth point of error is that the trial court erred in its failure and refusal to disregard the jury's answers to Special Issues Numbers 12, 13 and 14 because there was insufficient evidence to support the submission of such issues, or to support the jury finding thereon. After considering all the evidence in the record, we hold there was sufficient evidence to support the findings of the jury on Special Issues 12 and 14. Appellant's fifth point of error is overruled.

## "SERVTEX'S APPEAL"

■ Next, we consider the appeal of Servtex. Appellant Servtex first complains that Fowco's misuse of the materials furnished by Servtex precludes Fowco's recovery as a matter of law. Servtex specifically complains of the jury's answer to Special Issue No. 5, asserting that there was no evidence or insufficient evidence to support the jury's answer thereto. In passing on the "no evidence" point, we are guided by the familiar rules governing such point of error. Special Issue No. 5 reads as follows:

> "Issue No. 5
>
> Do you find from a preponderance of the evidence that the methods employed by Fowco in laying the asphaltic concrete were in substantial conformity with the requirements of use provided by the Texas Highway Department Specifications No. 352?
>
> Answer: Such methods were in substantial conformity."

Servtex contends that Fowco did not use the proper equipment in laying the asphalt and such was the cause of the defective paving job. The record shows that Fowco used four methods in laying the Hot mix-Cold laid material: those being by motor grader; Layton drag box; Barber Green

Laydown machine; and hand spreading. Servtex asserts that the only permissible method of laying the material was by using a motor grader, and under Texas Highway Specifications 352, a motor grader is the "only" authorized equipment for spreading and laying the asphalt. First, the Texas Highway Specifications No. 352 do not limit spreading of the asphalt by a motor grader only, as Servtex contends. Those specifications read in part as follows:

"The mixture shall be thoroughly aerated and then spread into place with a power motor grader, in a uniform layer of such depth that after receiving ultimate compaction by rolling, the requirements of the typical cross sections will have been fulfilled. *Hand spreading will be permitted* where the mixture is placed on narrow strips or small irregular areas.

\* \* \* \* \* \*

*If primer and water are not added to the paving mixture it may be placed with specified spreading and finishing machine.* (Emphasis supplied.)

\* \* \* \* \* \*

(3) The spreading and finishing machine shall be of a type approved by the Engineer and shall be capable of producing a surface that will meet the requirements of the typical cross-section and the surface test.

\* \* \* \* \* \*

(5) The motor grader, *if used*, shall be a self propelled power motor grader." (See Servtex Exhibit II)

Such language in the Texas Highway Department Specification 352 leaves no doubt that methods other than the use of a road grader are authorized. The evidence was that primer or water was not added to the hot mix-cold laid material, thereby authorizing the mixture to be placed with a spreading or finishing machine in accordance with the specifications. The evidence conclusively shows that all the asphalt failed, even that laid by the use of a road grader. In questioning Lewis Fowler and Mr. Claycomb, one of the architects in charge of the Alice High School project, both testified that regardless of whether the Layton machine, motor grader or Barber Green Machine were used, a bad job resulted uniformly throughout the entire job.

Servtex next asserts that Fowco did not properly compact the material and such was also a cause of the material unraveling and becoming dislodged. Mr. Claycomb, the architect, testified that the material was compacted, but it didn't stick together very well. He thereafter requested Lewis Fowler to roll the surface some more. Fowler complied with such request, rerolling it six or seven more times, without the desired result being accomplished. The paving remained unacceptable after repeatedly rerolling the surface. There was testimony from Mr. White of Trinity Testing Laboratory, Inc. that he had made compaction test and that the rolling and compaction of the material met the standards set out in the specifications thereby leaving the inference that it was the material that was defective since the method of laying it down and compaction was within the specification requirements. The evidence above clearly shows that there was "some evidence" to support the jury's finding. Servtex's no evidence point is overruled. It is equally clear after considering all the evidence that there was sufficient evidence to support the jury's verdict. Appellant Servtex's points of error 1 through 5 are overruled.

Appellant Servtex, in points of error 6, 7, 8, 11 and 12, asserts that the trial court erred in not disregarding the jury's finding on Special Issue No. 2 in that there was no evidence or insufficient evidence to support the jury's finding that the materials sold by Servtex to Fowco did not conform to Texas Highway Department Specifications 352 for Hot Mix-Cold Laid asphaltic concrete type DD. Servtex, in their points 9, 10, 13 and 14, assert that there was no evidence or insufficient evidence to sup-

port the jury's answer to Special Issue No. 3, finding that the failure of Servtex's asphalt to conform was the proximate cause of the failure of the paving job at the Alice High School job. These points will be discussed together. We will first consider Servtex's no evidence points. At the time Lewis Fowler began work on the Alice High School project, he learned that Hot mix-Hot laid asphalt was unavailable, thus prompting his inquiry as to whether Servtex could deliver a substitute Hot mix-cold laid asphalt which would meet the requirements of Texas Highway Department Specifications 352. Servtex, on April 20, 1970, replied by sending the following statement to Fowco:

"TO WHOM IT MAY CONCERN:

This is to certify that the hot mix-cold laid asphaltic concrete, type DD, which we are furnishing Fowco Construction Co. for use on Alice High School project will meet all the requirements as set out in Texas Highway Department Specifications Item 352.

/s/ J. G. Rheinluender
Sales Manager, President
Servtex Materials Company"

Lewis Fowler, who had been in the asphalt paving business for approximately 25 years, testified that when he began putting the Servtex asphalt down, it looked drier than any other hot mix-cold laid asphaltic concrete that he had ever put down before. Mr. Heldenfels, of Heldenfels Brothers, who redid the job after Fowco refused to correct the defects, testified that the material lacked cohesiveness and would not adhere. Mr. Dewey Smith, Superintendent of Schools for Alice School district, testified to the loose condition of the asphalt after it had been laid. He stated that it could be picked up in places and could be dropped from your fingers in particles. Robert White, manager of the Trinity Testing Laboratories, testified that as a result of his testing of the asphaltic material that failed at the Alice site, he found that

the material was a dry material that would not stick together and was not cohesive. The evidence showed that all the asphalt supplied by Servtex failed, despite Fowler's using three different types of machines in laying it and after repeatedly rerolling it so as to make sure it had been properly compacted. It is clear to us from the evidence that the type of machine used in laying the asphalt was not the cause of the asphalt failing. Heldenfels Brothers, in correcting the defective paving job, found it unnecessary to redo or recompact the base laid by Fowco. The base met all compaction tests. There is also evidence in the record indicating that if the base had not properly been compacted in the first place (as contended by Servtex), it could not have been used by Heldenfels without completely reworking the base. Heldenfels testified such was not necessary and was not done.

The record also shows that there were no changes in the drainage system as it existed when Fowler laid down the Servtex asphalt. Heldenfels'.job turned out satisfactory, using the same base, subbase, and drainage system that Fowler used. The only difference in the completed job was the use of Heldenfels' own asphalt and not that of Servtex. There was evidence that the material purchased by Fowco, since it was not used by the State of Texas, received no final inspection as to quality before leaving the plant as is required for the State of Texas. There was expert testimony by five men: Therell Smith, President of Smith Construction Company; H. D. Bailey, a paving and concrete contractor for 37 years; Roger Welch, District Construction engineer with the State Highway Department; Robert White, manager of Trinity Testing Laboratories, Inc.; and Clement O. Williams, Sr., a registered professional engineer. These individuals all testified that when taking into consideration the facts: that there existed a good base properly compacted; that the same drainage system was used when Fowco laid the Servtex asphalt; and that asphalt of

one kind fails and has to be taken up within two months after it is put down; and later after the defective material is taken up and a different asphalt is put on and stays in good condition for approximately three years thereafter, the most probable and likely cause of the failure was the asphalt materials and nothing else. After reviewing all of the evidence, we find that the evidence is sufficient to support the jury's findings that the material supplied by Servtex failed to conform to the Texas Highway Department's specifications and that such failure to conform was the proximate cause of the failure of the paving job by Fowco at Alice High School. Appellant Servtex's points 6 through 14 are overruled.

■ Servtex, in its points of error numbers 15–21, assert that the trial court erred in allowing submission of special issues numbers 6–10 because an implied warranty of fitness for a particular purpose is excluded as a matter of law by an express written warranty. With this, we disagree. Special Issues 6 through 10 in essence required the jury to determine whether Servtex breached an implied warranty of fitness for a particular purpose. The jury answered in the affirmative. In Tex.Bus. & Comm. Code Ann. § 2.315, V.T.C.A., an implied warranty of fitness for a particular purpose is defined:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purposes."

To determine how such implied warranty of fitness can and is excluded, Tex.Bus. & Comm. Code Ann. § 2.316(b) sets out such methods of exclusion:

"(b) Subject to Subsection (c) . . . to exclude or modify any implied warranty of fitness the exclusion *must* be by a *writing* and *conspicuous*. Language to exclude all implied warranties of fitness is sufficient if it states, for example 'There are no warranties which extend beyond the description on the face hereof.'" (Emphasis added.)

See K & S Oil Well Service, Inc. v. Cabot Corporation, Inc., 491 S.W.2d 733 (Tex. Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). See also Weintraub, Disclaimer of Warranties and Limitation of Damages for Breach of Warranty under the UCC, 53 Texas L.Rev. 60 (1974). Section 2.317 Tex.Bus. & Comm. Code Ann. states that warranties, whether express or implied, shall be construed as consistent with each other and as cumulative.

In reviewing the record, we find no evidence that Servtex did in fact exclude any implied warranties in accordance with Section 2.316(b), nor was there any intention evidenced on the part of Servtex to exclude such implied warranty, or that said warranties are inconsistent with each other. Appellant cites to us only one case for the proposition that a written warranty excludes the possibility of an implied warranty respecting the same subject matter. E. F. Elmberg Co. v. Dunlap Hardware Co., 234 S.W. 700 (Tex.Civ.App.—Amarillo 1921, no writ). This case was decided prior to the adoption of the Uniform Commercial Code in 1966, and thus, was not governed by the Code, as we are today. In a more recent case, Bowen v. Young, 507 S.W.2d 600 (Tex.Civ.App.—El Paso 1974, no writ), the court held that to exclude implied warranties, the seller must comply with Section 2.316 of the Code. See also S-C Industries v. American Hydroponics System, 468 F.2d 852 (5th Cir. 1972). Appellant Servtex's points of error 15 through 21 are overruled.

■ Appellant Servtex next asserts in its points of error 22 through 40 that there was no evidence or insufficient evidence to support the jury's finding in Special Issues 6, 7, 8, 9 and 10 that Servtex

breached an implied warranty of fitness for a particular purpose of the material sold by it to Fowco. Basically, there are two facts which must be proved before an implied warranty of fitness for a particular purpose arises and Servtex contends these were not so proved. First, Servtex at the time of contracting with Fowco must have known or had reason to have known the particular purpose for which these goods (asphalt) were required. Parks v. Glidden Company, 433 S.W.2d 445 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.). The "particular purpose" envisions a specific use by the buyer which is peculiar to the nature of his business. In this instance, the particular purpose of the asphalt supplied by Servtex was for paving of parking lots and entrances at Alice High School. At the time Fowco entered its order with Servtex, Servtex knew of the particular purpose for which the asphalt was to be used. This was evidenced by the above quoted certificate from Servtex to Fowco.

Lewis Fowler also testified that in ordering the asphalt from Servtex he informed Mr. Rheinluender, an employee of Servtex, that the materials were to be used for the paving of parking areas and driveways of Alice High School. With this admitted knowledge, along with Lewis Fowler's testimony, it is evident that Servtex knew or should have known the nature of the purpose for which the asphalt would be used. Parks v. Glidden Company, supra; Tennessee Carolina Transp., Inc. v. Strick Corp., 283 N.C. 423, 196 S.E.2d 711 (1973). Secondly, Fowco must show that it relied on Servtex's skill and/or judgment to select or furnish suitable goods. Brown v. ASGROW Seed Company of Texas, 379 S.W.2d 412 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.); Craftsman Glass, Inc. v. Cathey, 351 S.W.2d 950 (Tex.Civ.App.—Amarillo 1961, no writ). Lewis Fowler repeatedly testified that he did in fact rely on the representation in Servtex's certificate, together with representation by Servtex that their mate-

rial was of good quality. From the record, we find that there was sufficient evidence to support the jury's finding that the implied warranty of fitness for a particular purpose existed and was in fact breached by Servtex.

Servtex next complains that the admission of testimony concerning an alleged inspection of the project by Servtex representatives, over Servtex's objection, was so prejudicial as to constitute reversible error. We disagree. Servtex asserted that the asphalt supplied to Fowco was misused by Fowco. The jury found that there was no misuse on Fowco's part. The testimony was relevant to the misuse issue submitted to the jury. It was not reversible error to allow its introduction. Tex.R. Civ.P., Rule 434.

Appellant Servtex next complains that Fowco's proper measure of damages was the difference in market value of the material as delivered and warranted, and not the reasonable and necessary sum of money required to be expended to correct the defective paving job, as was submitted in Special Issues 4 and 10. The applicable statutes are Sections 2.714(b), (c) and 2.-715 of the Uniform Commercial Code, Vernon's Annotated Texas Statutes. Section 2.714 provides in part:

"(b). The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount.* (Emphasis added.)

(c) In a proper case any incidental and consequential damages under the next section may also be recovered."

Sec. 2.715 of the Uniform Commercial Code, Buyer's Incidental and Consequential Damages, provides:

"(a) Incidental damages resulting from the seller's breach include

\* \* \* any other reasonable expense incident to the delay or other breach.

(b) Consequential damages resulting from the seller's breach include (1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(2) injury to person or property proximately resulting from any breach of warranty."

There is abundant evidence that Servtex knew the exact needs of Fowco at the time of supplying the asphalt. Thus, Servtex could have reasonably foreseen that if the asphalt proved defective and failed, the entire job would have to be taken up and would have to be completely redone. See Ligon v. Chas. P. Davis Hardware, Inc., 492 S.W.2d 374 (Tex.Civ.App.—Austin 1973, no writ). Since the asphalt was defective, it had no value. There was evidence that another job to which Servtex supplied its asphalt, went bad and the defective asphalt had to be taken up and the job redone with Servtex supplying new asphalt. The evidence amply supports the findings of the jury that the failure of the asphalt was the proximate cause of the failure of the Alice High School Paving Project. In the instant case, the ordinary measure of damages for breach of warranty stated in Section 2.714(b) of the Uniform Commercial Code is not applicable because of special circumstances showing proximate damages of a different amount. The proximate damages, in this case consist of incidental and consequential damages as provided by Section 2.715 of the code. General Supply and Equipment Co., Inc. v. Phillips, 490 S.W.2d 913 (Tex.Civ. App.—Tyler 1972, writ ref'd n. r. e.); Sears, Roebuck & Co. v. Hough, 421 S.W. 2d 714 (Tex.Civ.App.—Houston [14th Dist.] 1967, no writ); Cruz v. Ansul Chemical Company, 399 S.W.2d 944 (Tex. Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.). For these reasons, the court was correct in submitting Special Issues Numbers 4 and 10. Appellant Servtex's points 22 through 40 are overruled.

Since our above holdings are dispositive of the fundamental questions in this case, we do not deem it necessary to discuss in further detail the points of error submitted. We have carefully considered all 59 points of error of Servtex and all of the points of error of Appellant Lanphier and they are overruled.

Judgment of the trial court is affirmed.

## OPINION ON MOTION FOR RE-HEARING

Appellant Lanphier Construction Company in its motion for rehearing re-asserts that this Court has erred in not disregarding the jury's answer to Special Issue No. 1 and in not rendering judgment in favor of Lanphier for $30,088.40 instead of affirming the trial court's judgment for $20,000.00. Lanphier alleged (in its second amended petition) that it was required to pay Heldenfels Brothers the sum of $29,450.00 for redoing certain paving work plus an additional $638.40 for restripping. Lanphier further alleged that such sums were both reasonable and necessary costs of having the work redone. The record clearly shows that there was conflicting testimony as to what the "reasonable charge" for such work was. The trial court submitted the following special issue:

### "ISSUE NO. 1

Find from a preponderance of the evidence the *reasonable and necessary sum of money*, if any, required to be expended by Lanphier Construction Company to correct the defective and unacceptable asphalt paving job performed at the Alice High School by Fowco Construction Company.

Answer in dollars and cents, if any.

Answer: $20,000.00" (Emphasis supplied).

The above issue as submitted was not objected to by either Lanphier or any of the other parties. In its amended motion for new trial, Lanphier complains that the submission of Special Issue No. 1 was unnecessary and that plaintiff was entitled to recover the undisputed sum expended in correcting such defective work ($30,088.40) as a matter of law.

For the first time on appeal, Lanphier asserts that the issue as submitted was wrong, that the actual costs of completion and not the reasonable costs of completion was the proper amount that Lanphier was entitled to. Lanphier says that this is true because of the contractual relationship between Lanphier and Fowco, citing Page v. Travis-Williamson County Water Control and Improvement District No. 1, 367 S.W.2d 307 (Tex.Sup.1963). Lanphier contends that the Page case does away with the requirement of objecting to an issue as submitted. We do not read the Page case that way. Lanphier, for the first time on appeal, asserts that because of a contractual provision in the contract [1] between it and Fowco, Lanphier is entitled to recover the sum of $30,088.40 as a matter of law. Lanphier argues that its recovery should be based on the actual cost expended rather than the reasonable and necessary cost of reworking the job because such contractual provision provides for such. However, Lanphier did not plead this contractual provision nor did it raise any issue with respect thereto. We are not authorized to consider a theory of recovery that was not before the trial court and that the trial court was not called upon to decide. State of California Department of Mental Hygiene v. Bank of Southwest National Association, 163 Tex. 314, 354 S.W.2d 576 (1962); Findley v. Decker, 499 S.W.2d 350 (Tex.Civ.App.—

Waco 1973, no writ); Del Rio Bank and Trust Company v. McCarty, 489 S.W.2d 178 (Tex.Civ.App.—San Antonio 1972, no writ).

There is another reason that Lanphier is bound by such finding of the jury. Lanphier failed to object to the issue as submitted. Where the ground of recovery is submitted, even though it is erroneous, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will, if supported by the evidence, form the basis of the court's judgment. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them. Allen v. American National Insurance Company, 380 S.W.2d 604 (Tex.Sup.1964); Cox v. Huffman, 159 Tex. 298, 319 S.W.2d 295 (1959).

Lanphier continues its argument and contends that we should disregard Special Issue No. 1 for the reason that such issue is immaterial. We do not agree. An issue is immaterial when (1) it should not have been submitted; or (2) though properly submitted, it has been rendered immaterial by other findings. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup.1966). Stating it another way, if a finding upon the issue claimed to be immaterial could if made, or does as made create a fatal conflict with other findings or otherwise affect the legal significance of the verdict and hence the judgment to be entered, the issue is material and must not be ignored. The issue as submitted does have an effect on the judgment and as such is not immaterial.

We have carefully considered all of the points of error in the motions for rehearing of Lanphier and Servtex Materials, and they are overruled.

1. In the event the Subcontractor refuses to man his portion of the work to the satisfaction of the General Contractor, then the General Contractor shall, after notifying the subcontractor of the situation in writing, man the job and back charge the subcontractor for the work. It is agreed that Sub-Contractor shall have forty-eight (48) hours after the receipt of the letter to fulfill his obligations.